WABASH RAILROAD COMPANY *v.* ADELBERT COLLEGE OF THE WESTERN RESERVE UNIVERSITY.

ERROR TO THE SUPREME COURT OF THE STATE OF OHIO.

No. 40.   Argued November 6, 7, 1907.—Decided January 6, 1908.

Where the Federal questions are clearly presented by the answer in the state court, and the decree rendered could not have been made without adversely deciding them, and, as in this case, they are substantial as involving the jurisdiction of the Circuit Court over property in its possession and the effect to be given to its decree, this court has jurisdiction and the writ of error will not be dismissed.

The taking possession by a court of competent jurisdiction of property through its officers withdraws that property from the jurisdiction of all other courts, and the latter, though of concurrent jurisdiction, cannot disturb that possession, during the continuance whereof the court originally acquiring jurisdiction is competent to hear and determine all questions respecting the title, possession and control of the property. Under this general rule ancillary jurisdiction of the Federal courts exists over subordinate suits affecting property in their possession although the diversity of citizenship necessary to confer jurisdiction in an independent suit does not exist.

The possession of property in the Circuit Court carries with it the exclusive jurisdiction to determine all judicial questions concerning it, and that jurisdiction continues after the property has passed out of its possession by a sale under its decree to the extent of ascertaining the rights of, and extent of liens asserted by, parties to the suit and which are expressly reserved by the decree and subject to which the purchaser takes title; and any one asserting any of such reserved matters as against the property must pursue his remedy in the Circuit Court and the state court is without jurisdiction.

It will be presumed that the Circuit Court, in determining the validity of liens affecting property in its possession, will consider the decisions of the courts of the State in which the property is situated with that respect which the decisions of this court require.

A suit brought by the holder of some of a series of bonds, the complaint in which alleges that the suit is brought on complainant's behalf and also on behalf of all others of like interest joining therein and contributing to the expenses, and of which no other notice of its pendency is given to the other bondholders, is not a representative or class suit the judgment in which binds those not joining therein or not privies to those who do. *Compton* v. *Jesup*, 68 Fed. Rep. 263, concurred in.

See also p. 609, *post*.

THIS is a writ of error directed to the Supreme Court of the State of Ohio. In that court the defendants in error obtained a decree declaring that certain negotiable notes held by them, which had been made by the Toledo and Wabash Railroad Company, were entitled to a lien on property once owned by that company and now owned by the plaintiff in error, and ordering a sale in satisfaction of that lien. The Federal questions presented and such facts as are deemed material to their decision are stated in the opinion.

*Mr. Rush Taggart* for plaintiff in error:

The Wabash Railroad Company claims that the prior and

exclusive jurisdiction of all the property involved in this case was in the Federal court from the time of the appointment of the receivers in May, 1884, and that as the Federal court has never relinquished such jurisdiction, the state court could have no jurisdiction to determine the questions presented in this case; also that the state court completely failed to give due force and effect to the decree of foreclosure entered in the Federal court on March 23, 1889.

The provisions of the decree of March 23, 1889, indicate a clear intention on the part of the Federal court to retain the final adjudication of all existing questions respecting this property, and there can be no question as to the power of the court to render a decree with such reservations. *Julian* v. *Central Trust Company*, 193 U. S. 93.

Under the reservations in the decree relating to the claim of James Compton, in view of the facts, it is perfectly clear that this property is still within the exclusive jurisdiction of the Federal court, and that while there, no state court could take jurisdiction for the purpose of ascertaining claims against it. *Hagan* v. *Lucas*, 10 Pet. 400; *Williams* v. *Benedict*, 8 How. 107, 112; *Peale* v. *Phipps*, 14 How. 375; *Yonley* v. *Lavender*, 21 Wall. 276; *Barton* v. *Barbour*, 104 U. S. 126; *Wiswall* v. *Simpson*, 14 How. 126; *Pulliam* v. *Osborne*, 17 How. 471; *Freeman* v. *Howe*, 24 How. 450; *People's Bank* v. *Calhoun*, 102 U. S. 256; *Porter* v. *Sabin*, 149 U. S. 473; Bispham's Equity, § 413; *French, Trustee*, v. *Hay*, 22 Wall. 250.

The Wabash Railroad Company, the plaintiff in error, has fully preserved all the questions under the decree by its pleadings in this cause. The Federal questions of the prior and exclusive jurisdiction of the Federal courts, resulting from the litigations in the Federal courts, and the decree of March 23, 1889, were presented upon the pleadings at every stage of the case to the state court, and were by the state court denied, and therefore the questions are fully presented upon the record justifying their consideration by this court.

The state court failed to give due force to the decree of the

Circuit Court for the District of Indiana in the case of *Ham v. Wabash, St. Louis and Pacific Railway*, which decree was a final and conclusive adjudication of all the issues in this case.

This Ham suit in Indiana, in July, 1880, whatever may have been its character prior to that time, became, in view of the allegations of the amended and supplemental bill then filed, distinctively a class suit on behalf of all the holders of equipment bonds.

The decree of the Circuit Court in the Ham suit, entered in accordance with the mandate of this court, was not a voluntary dismissal of the bill without prejudice on complainant's motion, nor is it an involuntary non-suit simply, but is a decree upon the merits of the contention, a decree in favor of the defendants against the complainant in that suit, finding authoritatively the absence of equity in the complainant's case, and concluding the complainants, and all of the class represented by them as to the merits of the questions involved in that litigation. Such is the proper form of a final decree in equity. It finds the equity of the case with the defendants, and dismisses the plaintiff's bill with costs to the defendants. 3 Daniel, Chy. Pldgs. (5th ed.), 2355, 2356; Ordinances of Lord Bacon, No. 13; Barton's Suit in Equity (p. 207); *Swan Land & Cattle Co.* v. *Frank*, 148 U. S. 603; *Kendig* v. *Dean*, 97 U. S. 423, 426.

*Mr. John W. Warrington*, with whom *Mr. John C. F. Gardner, Mr. Thomas B. Paxton, Junior*, and *Mr. Murray Seasongood* were on the brief, for defendants in error:

Since this case is brought here upon a writ of error to the Supreme Court of a State, "there must be some fair ground for asserting the existence of a Federal question." It is not enough to show that the claim of a Federal question was set up. *New Orleans Water Works Co.* v. *Louisiana*, 185 U. S. 336.

The Federal question asserted must have merit. *Swafford* v. *Templeton*, 185 U. S. 487.

No question was made by the lienors as to the validity of

. the foreclosure decree. or the deed made in pursuance of it, or as to the regularity of the proceedings under which the order and deed were made, and it is admitted that the purchasers took all the title that the defendants in the foreclosure suit possessed. The judgments of the Ohio courts go no further than the claim made by defendants in error. The most that was claimed or decided in Ohio, was that the Federal court decree could not be so made as to impair or affect the lien of defendants in error, because they were not parties to the suit. *Avery* v. *Popper*, 179 U. S. 305, 314.

The reference to Compton's claim in the decree did not show a purpose to retain jurisdiction for all purposes. This court has decided that Compton's claim was really disposed of in the above mentioned decree. *Compton* v. *Jesup*, 167 U. S. 1, 31, at p. 31; *Julian* v. *Central Trust Co.*, 193 U. S. 93, discussed and distinguished.

As to the contention that a Federal question arises because the Ohio courts did not, as alleged, give due effect to the judgment of the Circuit Court of the United States in the Ham suit it need only be said that before any question could arise here as to what effect the Ohio courts in this cause gave to the judgment of dismissal in the Ham case, this court would have to determine whether the Ham suit was a class case. It is a question of general law, not a Federal matter, whether the Ham case was a class suit. If it was not, then the defendants in error could not be bound by it at all; nor were the courts of Ohio obliged to acquiesce in the judgment of dismissal of the Federal court in Indiana. *Winona & St. Peter Railroad* v. *Plainview*, 143 U. S. 371, at 390.

The receivership and foreclosure proceedings in the Federal courts from 1884 to July, 1889, have no effect upon the case at bar, which was begun in the Ohio courts prior thereto, and the issues were not finally made up or trial had of the case in the state court until after the receivership and foreclosure proceedings had ended and the property been conveyed and delivered to the plaintiff in error. *Farmers' Loan &c. Co.* v. *Lake*

*Street &c. Co.*, 177 U. S. 51, 61; *Louisville Trust Co.* v. *Knott* (1904), 130 Fed. Rep. 820, at p. 824, per Lurton, Severens and Richards, JJ.; *Zimmerman* v. *So Relle* (1897), 80 Fed. Rep. 417, at p. 420, per Sanborn, Thayer and Lochren, JJ.

The possession and exclusive control of the Wabash property ended in the United States courts when the property was conveyed by the master commissioners to the purchasing committee and the receivers were discharged.

The Adelbert College and the cross-petitioners, defendants in error, were not parties to the Ham suit; said suit was never a representative suit, and the result of said suit is not a bar to the assertion and validity of the claims of defendants in error.

MR. JUSTICE MOODY delivered the opinion of the court.

In 1862 the Toledo and Wabash Railway Company owned and operated a railroad in Ohio and Indiana, and was incorporated under the laws of both States. That part of the property situated in Ohio was then incumbered by two mortgages, one to the Farmers' Loan and Trust Company for $900,000, and one to Edwin D. Morgan, Trustee, for $1,000,000. That part of the property situated in Indiana was then incumbered by two mortgages, one to the Farmers' Loan and Trust Company for $2,500,000, and one to Edwin D. Morgan, Trustee, for $1,500,000. In that year the company issued and sold unsecured sealed negotiable notes to the amount of $600,000, called equipment bonds. In 1865 this company consolidated with certain Illinois railroad corporations, thus creating the Toledo, Wabash and Western Railway Company. This consolidation was authorized by and in part effected under a statute of Ohio. The holders of the equipment bonds have contended that the result of this consolidation was to give to these hitherto unsecured obligations an equitable lien upon the property of the corporation which issued them, and that the equity of redemption of that property went into the hands of the consolidated corporation incumbered by that lien. Upon this

question this court and the Supreme Court of Ohio have, in the past, arrived at opposite conclusions; this court holding (*Wabash, St. Louis & Pac. Ry.* v. *Ham*, 114 U. S. 587), that the equipment bonds remained unsecured, and the Ohio court holding (*Compton* v. *Railway Co.*, 45 Ohio St. 592), that the effect of the consolidation was to create the lien claimed. This suit was brought by the defendants in error, holders of some of the equipment bonds, in the courts of Ohio for the purpose of enforcing the lien stated. They prevailed by the judgment of the Supreme Court of the State, which affirmed a decree of a lower court establishing the indebtedness upon the bonds, declaring a lien to secure the payment of that indebtedness upon the property owned, subject to the mortgages hereinbefore stated, by the Toledo and Wabash Railway Company in 1865, and directing a sale of such of that property as was within the State of Ohio in satisfaction of the lien.

The case is here upon a writ of error to the Supreme Court of Ohio to review this judgment. There are two Federal questions, it is contended, which were erroneously decided in the court below. The plaintiff in error insists: First, that the Ohio court had no jurisdiction to render the decree entered in the case, because the property affected by that decree was in the possession of a Circuit Court of the United States, and the questions litigated in this case were within the exclusive jurisdiction of the latter court. Second, that the decree of the Circuit Court of the United States for the District of Indiana in the case of *Ham* v. *Wabash, St. Louis & Pacific Railway Company* was a final adjudication of the issues in the case at bar, binding upon the defendants in error, and conclusive against their right to maintain this suit. The defendants in error contend that these questions were not properly raised in the court below, or, if properly raised, that they are so unsubstantial as to be frivolous, and therefore move that the writ of error be dismissed. But the questions were clearly presented by the answer in the Ohio courts, the decree rendered could not have been made without deciding them against the contention of the railroad

company, and we think that they are substantial and important.. The motion to dismiss is therefore overruled, and we proceed to the discussion of the merits of the questions.

1. The first question is whether a Circuit Court of the United States had exclusive jurisdiction of the issues determined by the Ohio court in the case at bar.   Before beginning the discussion of that question it is necessary to state the facts out of which it arises.   The Toledo, Wabash and Western Railway Company, whose property was incumbered, as we have seen, by mortgages of the Toledo and Wabash, for $5,900,000, and by the claim of lien of the equipment bonds, and by other mortgages upon the property of other corporations which entered into the consolidation, itself executed two mortgages upon all its property.   By the foreclosure of one of these mortgages the property became vested in the Wabash Railroad Company.   This company, after executing a mortgage on its property, consolidated with another railway company, creating the Wabash, St. Louis and Pacific Railway Company.   This company executed in 1880 a mortgage on its property to the Central Trust Company of New York and James Cheney for $50,000,000.   On May 27, 1884, the Wabash, St. Louis and Pacific Railway Company, having fallen into financial difficulties, filed a bill in the Federal courts in six States, alleging its insolvency and asking the appointment of receivers.   Thereupon receivers were appointed, qualified and took possession of the property.   Thereafter the Central Trust Company and Cheney began proceedings in several state courts for the foreclosure of their mortgage of $50,000,000.   These proceedings were removed to the Federal courts, and upon them a sale, under the direction of those courts, was made in 1886 to a purchasing committee.   Before this sale, however, on October 17, 1884, the Circuit Court of the United States for the Western Division of the Northern District of Ohio dismissed the bills for receivership and for the foreclosure of the Cheney mortgage as to all parties who claimed liens prior to that mortgage. After the sale upon the foreclosure of the Cheney mortgage,

proceedings for foreclosure of several other mortgages prior to it were begun in the Circuit Courts of the United States, consolidated, and resulted in decrees for foreclosure and sale under all the mortgages. These decrees were entered in the various Circuit Courts on March 23, 1889. In the meantime the property remained in the possession of the Circuit Courts through its receivers. The sale under these decrees was made to a purchasing committee, by whom it was conveyed to a new corporation, the Wabash Railroad Company, the plaintiff in error. By order of the Circuit Court for the Northern District of Ohio, made on June 18, 1889, possession of the property was delivered by the receiver to the purchasing committee, and he was discharged. Since August, 1889, the plaintiff in error, the Wabash Railroad Company, has been in possession of the property under the terms of the decrees of March 23, which presently will be stated. None of the defendants in error were parties to the proceedings in the Circuit Courts of the United States, and an attempt to remove this case from the Ohio courts to the Circuit Court of the United States, resisted by the defendants in error, failed. *Joy* v. *Adelbert College*, 146 U. S. 355.

It appears from this statement that the railroad property affected by this controversy was in the actual possession, through receivers, of Circuit Courts of the United States from the date of the appointment of receivers, May 27, 1884, to the date of their discharge and the delivery of the property to the purchasing committee, which was ordered on June 18, 1889, and was accomplished about July 1, 1889. It cannot be and apparently is not disputed that, during that period, the property was in the possession of the Circuit Courts of the United States, and that that possession carried with it the exclusive jurisdiction to determine all judicial questions concerning the property. But it is earnestly contended that, when the property passed out of the actual possession of the United States courts, in conformity with their decrees, into the hands of the purchasers under the decrees, the exclusive

jurisdiction of the United States courts came to an end. The applicability of this contention to the case at bar will appear upon a fuller statement of the origin and progress of the case at bar in the courts of Ohio. The suit was begun on April 28, 1883, by Adelbert College alone, which was the owner of two of the equipment bonds, each of the par value of $500, and prayed for the decree, which, with some variations, not material to be stated, was finally given. Nothing of moment, beyond the service of process and the filing of pleadings, occurred until 1889, when several other holders of the equipment bonds joined in the suit as co-plaintiffs, by filing, with leave of court, what is denominated an answer and cross petition, in which they prayed relief similar to that sought by the original plaintiff. This petition was verified on January 2, 1889, but the date of its filing does not appear in the record. Later other similar cross petitions were filed by leave of court. Pleadings continued to be filed from time to time by the different parties to the suit, the last appearing in the record being one verified March 9, 1896, thirteen years after the beginning of the suit and seven years after the discharge of the receiver by the Federal court. The cause was then heard by the Court of Common Pleas and judgment was rendered for the bondholders in July, 1897, which, after affirmance by an intermediate court, was affirmed by the Supreme Court of the State. It appears, therefore, that the trial and judgment in the state courts were long after the Federal courts had transferred the railroad property to the purchasers under the decrees for foreclosure, and had discharged the receiver. Since the Federal courts had parted with the physical possession of the property, they obviously could no longer exercise an exclusive jurisdiction respecting it, unless there was something in the decrees under which the property was sold and conveyed, which preserved to the courts the control of the property for the purpose of giving full effect to its judgments. We are brought then to the consideration of the terms of those decrees. Upon their proper interpretation and true effect our

decision must rest. For     correct understanding of the
decrees, and especially of the reservations contained in them,
it is necessary to ascertain the progress and present status of
still another litigation.   James Compton, an owner of some of
the equipment bonds, in a suit brought upon them in the Ohio
courts in 1880, obtained a decree by the judgment of the
Supreme Court of the State, ascertaining the amount due him
in respect of the bonds and accrued interest, declaring that
he was entitled to an equitable lien on the property owned
by the Toledo and Wabash Railway Company at the time of
the consolidation of 1865, subject to the mortgages upon that
property then existing, and ordering, in default of payment of
the sum found due, a sale of that part of the property which
was within the State of Ohio. *Compton* v. *Railway Company*,
45 Ohio St. 592. The entry of judgment on the mandate of
the Supreme Court was made in the Court of Common Pleas
in October, 1888.   Thereupon the Circuit Court for the North-
ern District of Ohio, Western Division, made Compton a party
to the consolidated foreclosure suit, and ordered him to appear
and plead, answer or demur.   Compton appeared specially and
set up his Ohio judgment.   Various proceedings have been had
with respect to his claim, including a judgment in this court
in May, 1897, *Compton* v. *Jesup*, 167 U. S. 1, affirming Comp-
ton's lien and right to a sale in satisfaction of it.   After the
decision of this court, Compton's claim was sent to a master,
who, after some ten years, made a report, which is now pend-
ing on exceptions in the Circuit Court.   At the time of the
decrees of foreclosure of March, 1889, the questions concern-
ing Compton's claim were, of course, undecided, and account
of them had to be taken in these decrees.

The decree of March 23, 1889, is very elaborate. The parts
of it material here may be stated with comparative brevity.
It ordered the foreclosure of all the mortgages upon the rail-
road property in the possession of the court, and the sale of
the property, and the disposition of the proceeds among those
adjudged to be rightfully entitled to it.   After reciting that

the property is in the possession of the court through its re-
ceiver, the decree directs that, in default of payment within
ten days of mortgage bonds and their coupons, scrip certifi-
cates, funded debt bonds and their coupons, amounting alto-
gether to some fourteen millions of dollars, the property should
be sold at public auction to the highest bidder. It was or-
dered that the separate divisions should first be offered for
sale separately, that afterward the whole property should be
offered for sale as a unit, and that the method of sale which
resulted in the better price should stand. The special masters
appointed to conduct the sale were directed, on confirmation
of the sale and payment of the purchase price, to execute a
deed or deeds which "shall vest in the grantee or grantees all
the right, title, estate, interest, property and equity of re-
demption, *except as hereby reserved,* of, in and to" the property
in fee simple. The decree then proceeds to define what is
"hereby reserved." The part of the decree which expresses
the reservation is so vital in the determination of the case that
it is printed in full in the margin.[1] In ascertaining its true

[1] All other questions arising under the pleadings or proceedings herein not
hereby disposed of or determined are hereby reserved for future adjudica-
tion; including the claim for unearned interest on bonds not yet due.

And the defendant James Compton having in open court on the final hear-
ing herein objected to the rendering or entry of any decree in this cause at
this time on the ground that the issues raised by the amendment to the
complainants' amended and supplemental ancillary bill and to the cross-
bill of the cross-complainants Solon Humphreys and Daniel A. Lindley,
trustees, and the answers of the defendant James Compton to be filed herein
have not been tried and determined, the court overrules such objection and
the defe dant James Compton duly excepts to such ruling and the entry
of this decree. But it is adjudged and decreed in the premises that the
rendering and entry of this decree in advance of the trial and determination
of such issues is upon and subject to the following conditions, to wit:

If upon the determination of such issues it shall be adjudged by this court
that the decree rendered by the Supreme Court of the State of Ohio in the
suit brought by said James Compton against the Wabash, St. Louis and
Pacific Railway Company and others, referred to in the pleadings herein,
and the lien thereby declared and adjudicated in his favor continue in full
force and effect, then the purchaser or purchasers at any sale or sales had
hereunder of that portion of the property sold, covered and affected by the

meaning and effect the whole situation, as it could be and doubtless was seen by the court, must be kept in view. The property had been in the possession of the court and managed

said lien, or the successors in the title of said purchaser or purchasers shall pay to said James Compton or his solicitors herein, within ten days after the entry of the decree herein in favor of said James Compton, the sum of three hundred and thirty-nine thousand nine hundred and twenty dollars and forty cents, with interest thereon at six per cent per annum from May 1, 1888, being the amount found due on the equipment bonds by him owned, by the Supreme Court of Ohio, in his said suit, upon the surrender by him of the bonds and coupons owned by him, referred to in his petition in such suit; and in default of such payment this court shall resume possession of the property covered and affected by the said lien of the defendant James Compton, and enforce such decree as it may render herein in his favor by a resale of such property or otherwise, as this court may direct.

And it is further ordered and adjudged, that notwithstanding the entry of this decree the said issue concerning the claim and interest of said Compton shall proceed to a final determination and decree in accordance with the rules and practice of this court, and any decree rendered thereupon shall bind the purchaser or purchasers at any sale or sales had hereunder, and all persons and corporations deriving any title to or interest in said property affected by such lien from or through them or any of them, and nothing in this decree contained shall be construed as an adjudication of any matter or thing as against the said James Compton, or to prejudice, annul or abridge any right, claim, interest or lien which the said James Compton may have in, to or upon the premises hereby directed to be sold or any part thereof, or in, to or upon any property whatsoever embraced in this decree; it being the intention to hereby preserve the rights of said Compton in the relation in which he now stands towards the mortgagees parties hereto.

Any sale, conveyance or assignment of the railway and property hereinabove described made under this decree shall not have the effect of discharging any part of said property from the payment or contribution to the payment of claims or demands chargeable against the same, whether for costs and expenses, the expenses of the receivership of said property and the full payment of all the debts and liabilities of the receivers of the Wabash, St. Louis and Pacific Railway Company, namely, Solon Humphreys and Thomas E. Tutt, Thomas M. Cooley and Gen. John McNulta, or upon intervening claims allowed or to be allowed, or upon any other claims or allowances that have been or may hereafter be charged against the property of the Wabash, St Louis and Pacific Railway Company, or any part thereof, or said receivers or either of them, or the adjustment of any equities arising out of the same between the parties hereto, or their successors, either by this court or by the Circuit Court of the United States for the Eastern District of Missouri, or by any United States Circuit Court exercising either original or ancillary jurisdiction over said property of the Wabash, St. Louis

through its receiver for five years.   It was desirable that it should pass into the hands of responsible owners, freed, as far.

and Pacific Railway Company, or any part thereof, or by any United States Circuit Court to which any of the parties in the consolidated cause of the Central Trust Company of New York and others against the Wabash, St. Louis and Pacific Railway Company and others in the Circuit Court of the United States for the Eastern District of Missouri, including the receivers, have been by the said Circuit Court of the United States remitted in proceedings or actions ancillary to the jurisdiction of said last-named court or otherwise.

Nor shall any such sale, conveyance, transfer or assignment made under and pursuant to this decree withdraw any of said railroad property or interests to be sold under this decree as hereinbefore directed from the jurisdiction of this and the other courts aforesaid, but the same shall remain in the custody of the receiver until such time as the court shall on motion direct said property in whole or from time to time in part to be released to the purchaser or purchasers thereof or any of them, and shall afterwards be subject to be retaken and, if necessary, resold if the sum so charged or to be charged against said property or any part thereof or said receivers as aforesaid shall not be paid within a reasonable time after being required by order of this or said other courts.

The conveyance and transfer of said property sold under this decree shall be subject to the powers and jurisdiction of the said courts and the purchasers of the property sold under this decree or any part thereof, and the parties hereto or their successors shall thereby become and remain subject to said jurisdiction of said courts so far as necessary to the enforcement of this provision of this decree, and such jurisdiction shall continue until all the claims and demands that have been or may be allowed against said property of the Wabash, St. Louis and Pacific Railway Company or any part thereof, or said receivers, by order of said courts shall be fully paid and discharged.

The provisions aforesaid shall apply to the purchasers of the same under this decree, and all persons taking such property through or under them, but the foregoing provisions shall not nor shall any reservation in this decree contained have the effect or be construed, nor are they or any of them intended to give to any claims that may exist any validity, character or status superior to what they now have, nor to decide or imply that any such claims exist.

The effect of said provisions and reservations shall be to prevent this decree operating as an additional defense to claims, if any there are, prior in right to the liens of the mortgages upon said property heretofore and hereby foreclosed and to preserve the prior right and lien of such claims and all allowances if found and decreed to exist.

And the court reserves the right to make such further order and direction at the foot of this decree as may seem proper.

as possible, from all prior liens and incumbrances. The question whether Compton had a lien and right of sale to satisfy it was unsettled, and would naturally be so for some time to come. He was a party to the suit. Many other holders of the equipment bonds, whose primary rights were like his, were seeking in the Ohio courts to obtain the same judgment which had there been awarded to him. None of them were parties to the suit in the United States courts, but their claims and the relief which the state court might give them could not be overlooked by a discerning court or a prudent purchaser. These facts and the considerations which arose out of them called upon the court to continue its grasp upon the property and its control of exclusive jurisdiction over it, both for the sake of those who had just claims upon it and for the sake of those who might purchase under the decree. A sale could not properly or safely be made upon any other conditions. The decree reserves: 1. All questions arising under the pleadings and proceedings for further adjudications. 2. The rights of Compton, which, when determined, may be enforced, after a resumption of possession by the court, by a resale of the property or otherwise. 3. The costs, expenses, debts and liabilities of the receivers, which are made a charge upon the property, to be enforced by a retaking and sale of the property. All the foregoing reservations are clearly and unmistakably made, the purchasers are warned that they must take title subject to the rights thereafter to be ascertained, to which the reservations relate, and the jurisdiction of the court over the questions and the right of the court to retake and resell the property is in terms preserved. Moreover, we are of the opinion that the decree, fairly interpreted in the light of the circumstances, made a still broader reservation. It is ordered that "any sale . . . of the railway and property . . . shall not have the effect of discharging any part of said property from the payment, or contribution to the payment, . . . upon intervening claims allowed, or to be allowed, or upon any other claims or allowances that have been, or may hereafter

be, charged against the property;" and that the "jurisdiction shall continue until all the claims and demands that have been or may be allowed against said property . . . shall be fully paid;" and that the reservations shall not have the effect "to give to any claims that may exist any validity, character or status superior to what they now have, nor to decide or imply that any such claims exist;" and that "The effect of said provisions and reservations shall be to prevent this decree operating as an additional defense to claims, if any there are, prior in right to the liens of the mortgages upon said property heretofore and hereby foreclosed, and to preserve the prior right and lien of such claims and all allowances if found and decreed to exist." This sweeping language, colored as it is by the last paragraph quoted, with its reference to claims which are liens prior in right to the mortgages, must be held to include claims under the equipment bonds. Such a reservation would be natural, in view of the facts that the rights under the equipment bonds were uncertain, and their holders not parties to the suit, and therefore not affected by the foreclosure. *Wiswall* v. *Sampson*, 14 How. 52, 67; *United Lines Tel. Co.* v. *Boston Trust Co.*, 147 U. S. 431, 448; *Pittsburg &c. Railway* v. *Loan & Trust Co.*, 172 U. S. 493, 515. The effect of the decree is to say to any purchaser under it, you must take this property subject to all claims which this court shall hereafter adjudge to be lawful, and you may be assured that you will be held to pay none other, and for the purpose of making this statement good the court reserves jurisdiction over the property and claims in respect to it, and the right to take it again into possession and exercise again the power of sale. It is obvious, therefore, that the court has parted with the possession of the property only conditionally, and that it has preserved complete control over it, and full jurisdiction over the claims which might be made against it. We may now consider the question whether the state court had the jurisdiction to render the judgment in the case at bar, as and when it was rendered.

When a court of competent jurisdiction has, by appropriate proceedings, taken property into its possession through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. The latter courts, though of concurrent jurisdiction, are without power to render any judgment which invades or disturbs the possession of the property while it is in the custody of the court which has seized it. For the purpose of avoiding injustice which otherwise might result, a court during the continuance of its possession has, as incident thereto and as ancillary to the suit in which the possession was acquired, jurisdiction to hear and determine all questions respecting the title, the possession or the control of the property. In the courts of the United States this incidental and ancillary jurisdiction exists, although in the subordinate suit there is no jurisdiction arising out of diversity of citizenship or the nature of the controversy. Those principles are of general application and not peculiar to the relations of the courts of the United States to the courts of the States; they are, however, of especial importance with respect to the relations of those courts, which exercise independent jurisdiction in the same territory, often over the same property, persons, and controversies; they are not based upon any supposed superiority of one court over the others, but serve to prevent a conflict over the possession of property, which would be unseemly and subversive of justice; and have been applied by this court in many cases, some of which are cited, sometimes in favor of the jurisdiction of the courts of the States and sometimes in favor of the jurisdiction of the courts of the United States, but always, it is believed, impartially and with a spirit of respect for the just authority of the States of the Union. *Hagan* v *Lucas,* 10 Pet. 400; *Williams* v. *Benedict,* 8 How. 107; *Wiswall* v. *Sampson,* 14 How. 52; *Peale* v. *Phipps,* 14 How. 368; *Pulliam* v. *Osborne,* 17 How. 471; *Taylor* v. *Carryl,* 20 How. 583; *Freeman* v. *Howe,* 24 How. 450; *Buck* v. *Colbath,* 3 Wall. 334; *Yonley* v. *Lavender,* 21 Wall. 276; *People's Bank* v. *Calhoun,* 102 U. S. 256; *Barton* v. *Barbour,* 104 U. S. 126; *Krippen-*

*dorf* v. *Hyde*, 110 U. S. 276; *Pacific R. R. of Missouri* v. *Missouri Pacific Railway*, 111 U. S. 505; *Covell* v. *Heyman*, 111 U. S. 176; *Heidritter* v. *Elizabeth Oil Cloth Company*, 112 U. S. 294; *Gumbel* v. *Pitkin*, 124 U. S. 131; *Johnson* v. *Christian*, 125 U. S. 642; *Morgan's Co.* v. *Texas Central Railway*, 137 U. S. 171; *Porter* v. *Sabin*, 149 U. S. 473.

The state courts in the case at bar, in deference, it is said by counsel, to these well-established principles, deferred action until after the property had been conveyed to the purchasers under the decree of foreclosure and the receiver discharged. Upon the termination of the receivership, it is urged, the exclusive jurisdiction of the Circuit Court ended, and the right of the state court to resume its normal jurisdiction revived. As this suit was begun before the property was taken into the possession of the Circuit Court, and when therefore the state court had jurisdiction over it, and remained dormant, except for the addition of parties and the filing of pleadings and service of process, until after the receivers had been discharged and the property conveyed to the purchaser, this would be true, if, as in *Shields* v. *Coleman*, 157 U. S. 168, the possession of the Circuit Court and its relation to the *res* had come to an end. But the Circuit Court attempted, in the decree of March 23, to prolong its control of the property, beyond the conveyance to the purchasers and the discharge of the receivers, up to the point of time when the claims therein stated should be ascertained and the just remedy for them applied, and to reserve the right to retake the property for those purposes. The effect of reservations in a decree of foreclosure, which to say the least were no broader than those in this decree, was before the court in *Julian* v. *Central Trust Co.*, 193 U. S. 93. The reservations in that case are stated on page 110, and of them the court said, p. 111: "It is obvious that by this decree of sale and confirmation it was the intention and purpose of the Federal court to retain jurisdiction over the cause so far as was necessary to determine all liens and demands to be paid by the purchaser;" and again, p. 112:

"The Federal court by its decree, reserved the right to determine what liens or claims should be charged upon the title conveyed by the court;" and again, p. 113: "the Circuit Court by the order made retained jurisdiction of the case to settle all claims against the property and to determine what burdens should be borne by the purchaser as a condition of holding the title conveyed." Here was a clear determination by this court that the exclusive jurisdiction of claims against a res, which had arisen out of the possession of the res in judicial proceedings for foreclosure of mortgages, might be continued after sale and conveyance of the property for the purpose of deciding what claims were legally chargeable against it. This is precisely what the Circuit Court attempted to do with respect to the property now before us, and its right to do it is clearly supported by the decision in the Julian case. Under the reservations in that case the Circuit Court was held to have power to protect the property sold by its order from sale on an execution issued by a state court. The state court was thought to be without power to direct such a sale even though its judgment was based upon a claim arising after the conveyance of the property, because, under the peculiar facts of the case, the judgment and execution in effect annulled the Federal decree. The principle underlying that case, however, which is material here, is that the jurisdiction over the res could be continued by reservations, after the physical possession of the property had been abandoned. This court there said, p. 112: "The Federal court, in protecting the purchaser under such circumstances, was acting in pursuance of the jurisdiction acquired when the foreclosure proceedings were begun." It needs but a moment's consideration of the facts in the case at bar to convince that if the exclusive jurisdiction of the Federal court were denied every evil, which that doctrine was designed to avert, would be let in. Some time, it is to be supposed, there will be a sale by order of the Federal court to satisfy Compton's lien. If the sale by the state court of the same property to satisfy other lienholders of equal rank with

Compton is allowed to proceed, which sale will convey the better title? Who would be bold enough to determine for himself that question? How much longer would the litigation with respect to this property continue if two persons could be found to purchase at the two sales? It is no answer to these questions that Compton has been made a party to this suit in the state court. He is still a party to the proceedings in the Federal court, and he must find satisfaction for his claim there. We are of the opinion that by the effect of the reservation in the decree of March 23, 1889, the exclusive jurisdiction of the Federal court over the property therein dealt with has continued, notwithstanding the conditional conveyance and that it still exists. The defendants in error must pursue their remedy in that court, which doubtless will consider the decisions of the state courts on questions of state law with the respect which the decisions of this court require. It follows, therefore, that the state court was without power to decree a sale of the property, and its judgment must be reversed.

2. There remains for decision the question whether the court below erred in declining to hold that the case of *Ham* v. *Wabash, St. Louis & Pacific Railway Company* conclusively adjudicated the merits of the claims of the defendants in error.

The record in that case must now be examined. A suit brought in a state court in 1878 by David J. Tysen, a holder of equipment bonds, against the Wabash Railway Company, then the owner of this railroad property, was removed to the Circuit Court of the United States for the District of Indiana. The suit was heard on a supplemental bill filed by Benjamin F. Ham and several other persons, who together owned equipment bonds of the par value of $113,500. The complainants alleged that the suit was brought "on their own behalf, as well as in behalf of all those in like interest who may come in and contribute to the expenses of and join in the prosecution of this suit." No notice of the pendency of the suit was given to the other holders of the bonds other than by this allegation in the bill. The Circuit Court, after due hearing, entered a

decree declaring that the bonds were entitled to a lien on the
property, owned by the Toledo and Wabash Railroad Com-
pany at the time of the consolidation of 1865, to secure the
payment of principal and interest, and ordering, in default
of payment, a sale of the property in satisfaction of the lien.
This decree was reversed by this court. *Wabash &c. Railway* v.
*Ham*, 114 U. S. 587. Thereafter the bill was dismissed for want
of equity by the Circuit Court. It is contended that the judg-
ment in this case is a bar to the claim for lien of all the holders
of the equipment bonds, whether they were parties or privies
to that suit or not. Accordingly the judgment in the Ham case
was pleaded in the state court in this case as a bar to the suit.
The theory of the plea in bar is that the Ham suit was a repre-
sentative or class suit, and that the judgment in it bound all
of the class, even if they were not parties or privies to it. It
was held otherwise by the Circuit Court of Appeals with respect
to this very judgment, *Compton* v. *Jesup*, 68 Fed. Rep. 263,
and in that opinion we concur. We do not deem it necessary
to follow the learned counsel for the plaintiff in error in his
elaborate discussion of the nature of representative suits, and
the effect of judgments in them upon those who are not parties
or privies. Nor is it necessary to go beyond the facts of this
case, or to consider what suits may be of such a nature and
effect. In this suit Ham might have proceeded alone, as
Compton did, or with others who chose to join with him. The
allegation that the suit is brought in behalf of all who should
join and share in the expense cannot make the judgment
binding on those who do not join. Some may have preferred
another jurisdiction, some perhaps could not join without
destroying the diversity of citizenship, upon which alone the
jurisdiction was based, or some possibly had never heard of
the pendency of the suit. It is clear if such suits in the Circuit
Courts of the United States could have the effect here claimed
for them, and the judgments in them were binding in all courts
against all other persons of the same class, that injustice might
result, and even collusive suits might be encouraged. We find

no controlling authority which leads us to such a conclusion. We think that the Ham suit was not a representative suit in the sense that the judgment in it bound the defendants in error who were not parties to it.   But for the reasons already given the judgment must be                                    *Reversed.*[1]

. Mr. Justice Harlan and Mr. Justice Peckham dissent from that part of the judgment which decides that the jurisdiction of the Federal court was exclusive after the delivery of the property to the purchaser under the foreclosure decree, and the discharge of the receiver.

———

[1] For opinion of the court on motion for rehearing and modification of the decree, see *post,* p. 609.