## PARK v. STRYKER.

(Circuit Court of Appeals, Eighth Circuit. June 4, 1925.)

No. 261.

1. Bankruptcy ⓒ=20(1)—Court has exclusive jurisdiction of bankrupt estates, but in certain cases jurisdiction of state court, once invoked, should not be interfered with.

Though bankruptcy court has exclusive jurisdiction of bankrupt estates, there are cases closely touching administration of Bankruptcy Act (Comp. St. § 9585 et seq.) of such nature that, when jurisdiction of state court is once invoked, it should not be interfered with by order of bankruptcy court.

2. Courts ⓒ=478—When court of competent jurisdiction takes possession of property, it is withdrawn from jurisdiction of other courts.

When court of competent jurisdiction takes possession of property through its officer, it is thereby withdrawn from jurisdiction of other

courts, and court having possession thereof has ancillary jurisdiction to hear and determine all questions respecting title, possession, or control of property, and federal courts have this jurisdiction, though not authorized by statute.

**3. Bankruptcy ⬅⮞217(½)—Referee held without jurisdiction to order stay of action in state court against bank for value of securities pledged to bankrupt.**

Referee was without jurisdiction to grant order staying replevin action in state court against bank holding securities pledged to secure bankrupt against loss, where securities were at all times in bank's possession and litigation in state court did not involve possession of securities, but sought merely personal judgment against bank for value thereof, after showing that they were clear in bank's hands.

Petition to Revise Order of the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Proceeding by A. F. Stryker, trustee of F. P. Lewis & Co., a partnership composed of F. P. Lewis and F. H. Freeman, bankrupts, to stay a further proceeding in state court by Faylard H. Park against the Live Stock National Bank of Omaha. A stay was granted, and Park brings a petition to revise. Reversed.

J. Dean Ringer and Harry W. Shackelford, both of Omaha, Neb., for petitioner.

Anan Raymond, of Omaha, Neb. (W. C. Fraser, of Omaha, Neb., on the brief), for respondent.

Philip E. Horan, of Omaha, Neb., for Live Stock Nat. Bank.

Before SANBORN and LEWIS, *Circuit Judges,* and POLLOCK, *District Judge.*

POLLOCK, District Judge. This is an original proceeding brought to revise an order made by the District Court of Nebraska in a proceeding in bankruptcy staying further proceedings in a court of the state in an action wherein petitioner was plaintiff and the Live Stock National Bank of Omaha (hereinafter called the "Bank") was defendant. The manner in which this controversy arises is this:

Petitioner was trading on the Stock Exchange at the Union Stockyards in South Omaha, Neb., through a firm known as F. P. Lewis & Co., a partnership composed of F. P. Lewis and F. H. Freeman. In order to secure said brokerage firm against loss on the trades by it made for petitioner, on August 9, 1921, petitioner deposited in the bank collateral securities under the following pledge, which securities were received by the bank:

"Omaha, Neb., August 9, 1921.

"Live Stock National Bank, Omaha, Nebraska—Gentlemen: I hand you herewith the following securities, which are to be held as security to my indebtedness with the F. P. Lewis Company and F. H. Freeman in connection with my live stock trading operations at the Union Stockyards, South Omaha:

"Membership South Omaha Live Stock Exchange No. 933.

"Membership South Omaha Live Stock Traders Exchange No. 174.

| | |
|---|---|
| Liberty Bonds of the First Issue | $ 100.00 |
| Liberty Bonds of the Second Issue | 1,000.00 |
| Liberty Bonds of the Third Issue | 700.00 |
| Liberty Bonds of the Fourth Issue | 1,200.00 |
| | $3,000.00 |

"Yours truly,

_____.

"Received the above-described securities.
    "Live Stock National Bank,
        "By Alvin Johnson, Cashier."

Thereafter, and on September 15, 1922, petitioner was induced to make the brokerage firm his promissory note of $7,500, which was also placed in the bank with the collateral security. Thereafter the brokerage firm of Lewis & Co. was adjudged a bankrupt, and respondent herein was duly selected and qualified as trustee in bankruptcy. The bank presented a claim against the bankrupt estate, and, representing to the referee in bankruptcy it had collateral security in its hands pledged to secure its demand, asked and obtained an order from the referee to proceed to a liquidation of such collaterals. On March 20, 1924, petitioner brought his action in the state court in the nature of a replevin action, without bond, to recover the value of his collaterals pledged with the bank to secure the bankrupt firm against loss in executing his trades on the exchange. In this petition it was alleged he owed nothing his collaterals were pledged to secure, and asked a recovery for the value of the same.

The trial of this case in the state court was begun on the 20th day of March, 1924. On that day an application was made to the referee in bankruptcy, and an order obtained staying further proceedings in the action in the state court. This order further contained a show cause order returnable before the District Court on the 23d day of April next ensuing. On that day the parties appeared

in the District Court, and, on a hearing had on a motion of petitioner to set aside the stay order of the referee theretofore granted, it was denied, and the court entered an order staying further proceedings in the action then pending and on trial in the state court. To revise this order of the court this proceeding was instituted in this court.

The sole question presented is the jurisdiction and power of the District Court of Nebraska in bankruptcy to grant the stay order entered.

[1] While it is quite well settled a court of bankruptcy has exclusive jurisdiction over the administration of bankrupt estates, and has the jurisdiction and power to draw before it all the assets of the bankrupt estate and make all orders in the administration of such estates under the Constitution and laws of our country, yet there are cases closely touching the administration of the Bankruptcy Act (Comp. St. § 9585 et seq.) of such nature the jurisdiction and power of a court of the state, once invoked, should not be interfered with by any order of the bankruptcy court. For this reason the nature and purpose of the action in the state court stayed by the order of the federal court of Nebraska must be examined, to correctly determine the power of the bankruptcy court to interfere with the same.

[2, 3] As has been seen, the action in the state court in no way sought to interfere with any assets in the possession of the bankruptcy court. The object of the action in the state court merely sought a personal judgment for the value of collaterals alleged to be owned by petitioner, pledged with the bank. If petitioner was at the time of the bringing of the action the owner of the securities pledged, and the same were free in the hands of the bank, and on demand the bank refused to turn the same over to plaintiff, then it was liable for their value to plaintiff. That this was the sole relief the plaintiff in the action in the state court could have obtained under the pleadings under the circumstances of this case is abundantly settled by decisions of the Supreme Court of the state. See Baum Iron Co. v. Union Savings Bank, 50 Neb. 387, 69 N. W. 939; Honaker v. Vesey, 57 Neb. 413, 77 N. W. 1100; Sloan v. Fist, 2 Neb. (Unof.) 664, 89 N. W. 760; Philleo v. McDonald, 27 Neb. 142, 42 N. W. 904.

From this statement of the case it is apparent, if the collaterals in the hands of the bank had been listed by the bankrupt as constituting a part of the estate in bankruptcy under the form of the action brought in the state court, the same not being a possessory action, the possession of the securities could not have been disturbed. It is a general rule:

"Where a court of competent jurisdiction has taken property into its possession, through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. The court having possession of the property, has an ancillary jurisdiction to hear and determine all questions respecting the title, possession, or control of the property. In the courts of the United States this ancillary jurisdiction may be exercised, though it is not authorized by any statute. The jurisdiction in such cases arises out of the possession of the property and is exclusive of the jurisdiction of all other courts, although otherwise the controversy would be cognizable in them. Wabash Railroad v. Adelbert College, 208 U. S. 38, 54 [28 S. Ct. 182, 52 L. Ed. 379]." Murphy v. John Hofman Co., 211 U. S. 562, 29 S. Ct. 154, 53 L. Ed. 327.

In Murphy v. John Hofman Co., supra, it is held:

"Where the bankruptcy court has the actual possession of property, the title to which is in dispute, that property is withdrawn from the jurisdiction of other courts, and, independently of any jurisdiction conferred by statute, the bankruptcy court, as is the case with other federal and state courts, has ancillary jurisdiction to hear and determine all questions respecting such title, and such jurisdiction cannot be disturbed by the process of any other court."

It is therefore manifest, as the property involved in the controversy in the state court in this case was at all times in the hands of the bank, and had not come into the possession of the bankruptcy court, and as the litigation in the state court did not involve the possession of the collaterals in the hands of the bank, but merely the right of the plaintiff in that action, petitioner here, to recover as against the bank the value of the securities pledged, upon a showing that the same were clear in the hands of the bank, and that plaintiff was entitled to said securities, which had been denied by the bank, that the stay order made by the referee was made wholly without jurisdiction or power by him (In re Siebert [D. C.] 133 F. 781), and that the order of the court approving and confirming the stay order of the referee should not have been granted under the circumstances of this case.

Therefore the order sought to be revised is accordingly reversed.