Glen Coleman SNOW, Plaintiff,

v.

Edith M. CLARK, Defendant,

and

George E. Stephens and Pattie Stephens, Additional Defendants upon a Petition for Attachment.

No. 66-C-17-C.

United States District Court
W. D. Virginia,
Charlottesville Division.

Jan. 20, 1967.

C. Waverly Parker, Rochelle, Va., David F. Berry, Ross, Berry & Coates, Stanardsville, Va., for plaintiff.

Edward R. Slaughter, Jr., Charlottesville, Va., McGuire, Woods & Battle, Richmond, Va., for defendant Clark.

James H. Michael, Jr., Michael & Dent, Charlottesville, Va., for defendants Stephens.

## OPINION

MICHIE, District Judge.

Plaintiff is a citizen of Virginia who brings this action in tort against the defendant Edith M. Clark, a citizen of New York. Plaintiff joined Pattie and George Stephens as additional defendants while effecting an attachment instituted *pendente lite* on property owned in Charlottesville, Virginia, by Mrs. Clark. Service was had on defendant Clark under Virginia's so-called "Long Arm" statutes: § 8-81.1 et seq., Code of Virginia, 1950. Mrs. Clark moved to dismiss the action on the ground that the court lacked jurisdiction over her personally and that service of process upon her was insufficient. George and Pattie Stephens have moved that the attachment be quashed as to them, urging that they need not be parties to this suit as they have no legal estate in the attached property. In addition, in oral argument it was contended that the joining of the Stephens destroyed complete diversity and thereby destroyed jurisdiction.

Defendant Clark's motion is founded principally on the premise that sections of the Virginia Long Arm Statutes relied on by plaintiff in bringing this action contravene due process rights guaranteed an individual by the Fourteenth Amendment and the Constitution of Virginia. Should this motion to dismiss be granted, the entire suit and concomitant attachment will fall and the two Stephens

will have the ultimate relief they seek. For this reason, the Stephens will not be mentioned again in the process of rendering a decision on defendant Clark's first motion, and use of the word "defendant" unless otherwise stated will hereinafter refer only to defendant Clark.

■ The complaint alleges that plaintiff, having contracted to paint the interior and exterior of a house owned by defendant at 108 Kent Terrace in Charlottesville, undertook in the course of his duties to move a desk or table in the drawer of which, unknown to him, was a firearm designed to hurl a cartridge containing tear gas. In the process of lifting the table plaintiff placed his hand inside the drawer. When he did, the gun discharged a tear gas cartridge into his eyes. Plaintiff alleges that as a result he has lost the sight of his right eye (except to distinguish between light and darkness) and has lost so much of the sight of his left eye as to become unemployable and incapable of any gainful activity. According to the complaint, all of plaintiff's injury is the proximate result of defendant's negligent acts or omissions. For purposes of determining jurisdiction, these allegations, not being patently frivolous, are to be taken as true. See, e. g., Nelson v. Miller, 11 Ill.2d 378, 393, 143 N.E.2d 673, 681 (1957) cited in Note, The Virginia "Long Arm" Statute, 51 Va.L.Rev. 719, 746–47 (1965). Were the rule otherwise in an action arising in tort, ultimate liability would have to be determined before a jurisdictional ruling could be made.

The specific sections of the statute relied on by plaintiff in his assertion that this court has personal jurisdiction over Mrs. Clark are § 8–81.2(a) (3) and (6) of the Code of Virginia, 1950. The pertinent parts of this statute read as follows:

§ 8–81.2 When personal jurisdiction over person may be exercised—

(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's

\* \* \* \* \* \*

(3) Causing tortious injury by an act or omission in this State;
\* \* \*

(6) Having an interest in, using, or possessing real property in this State; \* \* \*.

Counsel for defendant Clark is admirably candid in admitting that the trend of the law is toward expanding *in personam* jurisdiction and that his reason for objecting to an exercise of jurisdiction is chiefly because the relevant sections of the Virginia Long Arm Statute enacted in 1964 have not been interpreted. But as the Supreme Court said in Hanson v. Denckla, 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed. 1283 (1958), "\* \* \* [I]t is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts." Defendant's admission does not obviate an examination of the judicial authorities.

■ No one can dispute that the facts alleged place this case squarely under the terms of both clauses (3) and (6) quoted above and, in view of rule 4(e) of the Federal Rules of Civil Procedure, no serious argument can be made that a federal court cannot use Virginia's "Long Arm" statute to extend its jurisdiction to nonresident defendants if the clauses involved are constitutional. The present issue thus is narrowed to whether either clause meets due process requirements. If either does, this court has jurisdiction and defendant Clark's motion to dismiss for lack of jurisdiction must be overruled, assuming that the joining of the Stephens does not destroy diversity.

Before International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), was decided, courts used various theories to uphold an exercise of personal jurisdiction over non-resident defendants and avoid the jurisdictional restrictions laid down by Pennoyer v. Neff, 95 U.S. 714, 24 L. Ed. 565 (1877). The theory of corporate "presence" was employed when a corporate entity reached a certain level of "doing business" in a state. See, e. g., Philadelphia & R. Ry. v. McKibbin, 243 U.S.

264, 37 S.Ct. 280, 61 L.Ed. 710 (1917). The "consent" fiction was also utilized. Originally the case of Flexner v. Farson, 248 U.S. 289, 39 S.Ct. 97, 63 L.Ed. 250 (1919) limited applications of this "consent" theory to corporations but this distinction was debilitated by Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927), which held that a foreign motorist impliedly consented to a state's exercise of personal jurisdiction over him through substituted service when he used the highways of that state. Later the distinction between corporations and individuals was all but obliterated by Doherty & Co. v. Goodman, 294 U.S. 623, 55 S.Ct. 553, 79 L.Ed. 1097 (1935).

After the decision in *International Shoe,* the "minimum contacts" theory became the proper test to apply as fictions such as "presence" and "consent" fell by the wayside. Ever since *International Shoe* was decided, service upon a non-resident has been held valid if the non-resident has had such minimum contacts within the state that the maintenance of the suit "would not offend traditional notions of due process and fair play." This generality has become more meaningful as judicial decisions have defined the principle on a case-by-case basis.

An examination of a sample of the cases which have held certain minimum contact sufficient to meet the traditional notions of due process and fair play would indicate that the present contact of Mrs. Clark with the Commonwealth of Virginia is more than enough to subject her to *in personam* jurisdiction under either clause (3) or (6). In one of the more famous cases, McGee v. International Life Insurance, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), a single contract of insurance with a Californian was held adequate to subject the non-resident insurance company to personal jurisdiction in California. The residence of an agent of an individual securities dealer constituted sufficient minimum contact in Doherty & Co. v. Goodman, supra, to subject the out-of state dealer to personal jurisdiction. Other cases have held that the presence of a single item which later

caused tortious injury within a state is enough to make a non-resident manufacturer amenable to substituted service. See, e. g., Gray v. American Radiator & Standard Sanitary Co., 22 Ill.2d 432, 176 N.E.2d 761 (1961). Naturally, in each case different minimum contact requirements are explicated, differences due in part to the different state statutes and their respective bases for substituted service; but for purposes of examining due process standards these cases can be treated together.

The Western District of Virginia is certainly not devoid of recent decisions discussing due process requirements in relation to the Virginia Long Arm Statute. In Jackson v. National Linen Service Corp., 248 F.Supp. 962 (W.D.Va. 1965) the court found an Illinois manufacturer of a defective solvent sold in Virginia subject to *in personam* jurisdiction even though the company's sales in Virginia were only Twenty-Five Thousand Dollars out of its total four to five million dollars. Etzler v. Dille & McGuire Manufacturing Co., 249 F.Supp. 1 (W.D.Va.1965) held an out-of-state manufacturer of a defective lawn mower subject to personal jurisdiction in Virginia because the company derived "substantial revenue" from its sales in Virginia even though the company was insulated to some degree by a non-resident distributor. In St. Clair v. Righter, 250 F.Supp. 148 (W.D.Va.1966) a non-resident who mailed allegedly defamatory letters from out-of-state was found to be amenable to an exercise of *in personam* jurisdiction by a federal court sitting in Virginia.

Since 1958 when the 5–4 decision in Hanson v. Denckla, supra, was rendered holding that a Delaware Trust Company acting as a Trustee had not had the minimum contact with Florida, the residence of the settlor to subject it to personal jurisdiction in that state, the Supreme Court has not spoken further on this aspect of the scope of *in personam* jurisdiction. However, one of the latest opinions on the subject was written by Justice Goldberg sitting alone in Rosenblatt v. American Cyanamid Co., 86 S.Ct. 1,

15 L.Ed.2d 39 (1965). This was a proceeding before Mr. Justice Goldberg on an application for a stay of execution of a trial court's denial of defendant's pretrial motion to dismiss the complaint for want of personal jurisdiction. Eventually the appeal before the United States Supreme Court was dismissed for want of a substantial federal question, Rosenblatt v. American Cyanamid Co., 382 U.S. 110, 86 S.Ct. 256, 15 L.Ed.2d 192 (1965). But first Justice Goldberg delivered a memorandum in *Rosenblatt* which at one point quoted Professor Currie, who said:

> Indeed, the constitutionality of this assertion of jurisdiction, today, could only be doubted by those who determined to oppose the clear trend of the decisions. This situation is exactly that of the nonresident-motorist statutes, which were long ago upheld, except that the highways are not directly involved. It is now clear, if it was ever in doubt, that the nonresident-motorist cases were not really based on "consent" but on the interest of the forum State and the fairness of trial there to the defendant.

Currie, The Growth of the Long Arm, U.Ill. Law Forum 515, 540 (1963).

Additional excerpts from Justice Goldberg's memorandum were discussed in *St. Clair,* supra 250 F.Supp. at 154. These statements by Justice Goldberg and Professor Currie leave little doubt that courts will continue to test the propriety of exercising personal jurisdiction over non-resident defendants by examining a defendant's "contacts" with the forum state.

██ Under standards established by the decided cases, it is quite apparent that in the circumstances of the instant case Mrs. Clark's contact with the State of Virginia is sufficient to subject her to the personal jurisdiction of this court without violating any due process safeguards. She holds title to a house in Virginia, the very ownership of which initiated a chain of events that resulted in plaintiff's alleged injury. It is difficult to see how anyone's notion of due process and fair play can be offended by requiring defendant Clark to submit to *in personam* jurisdiction in an action brought to redress this injury. She has availed herself of the privilege of owning land and a house constructed on that land in Virginia. No one thinks it unfair that she be required to pay local real estate taxes or to comply with city zoning laws. Should she be able to hide behind her non-residency to avoid personal responsibility for injury relating to her ownership of the land in question? I now hold that she can not and that she is subject to this court's jurisdiction under § 8–81.2(a) (6) of the Code of Virginia, 1950. I do not reach the question of whether Mrs. Clark would also be subject to the personal jurisdiction of the court under § 8–81.2(a) (3) on the basis of having committed a tortious act within the state or whether she would be subject to personal jurisdiction under § 8–81.2(a) (6) if the alleged tort were unrelated to her ownership of land.

Counsel has argued that the introduction of defendants Pattie and George Stephens destroys complete diversity under the rule of Strawbridge v. Curtis, 3 Cranch 267, 7 U.S. 267, 2 L.Ed. 435 (1806). Since the Stephens were brought into this suit solely in order to assure the validity of an attachment of the Clark land, an ancillary proceeding justified by an attempt to provide property from which a claim could be partially satisfied if the claim were successful, their existence in this litigation does not destroy complete diversity. Wabash Railroad v. Adelbert College, 208 U.S. 38, 28 S.Ct. 182, 52 L.Ed. 379 (1908); and Oliver v. United States, 156 F.2d 281 (8th Cir. 1946); see also Note, Ancillary Jurisdiction of the Federal Courts, 48 Iowa L.Rev. 383, 384 (1963).

In accordance with the foregoing, defendant Clark's motion to dismiss for lack of jurisdiction is overruled.