**DRAINAGE DIST. NO. 17 OF MISSISSIPPI COUNTY, ARK., et al. v. GUARDIAN TRUST CO. et al.**

No. 9031.

Circuit Court of Appeals, Eighth Circuit.

Sept. 14, 1931.

GARDNER, Circuit Judge, dissenting.

Charles T. Coleman, of Little Rock, Ark. (Walter G. Riddick, of Little Rock, Ark., on the brief), for appellants.

Charles D. Frierson, of Jonesboro, Ark., for appellees.

Before STONE and GARDNER, Circuit Judges, and YOUMANS, District Judge.

YOUMANS, District Judge.

This is an appeal under section 129 of the Judicial Code (section 227, title 28, U. S. C. [28 USCA § 227]) by drainage district No. 17 of Mississippi county, and R. C. Rose, B. A. Lynch, and C. W. Afflick, as directors of said district, from an order of the District Court appointing a receiver for said district. The case had been removed from the chancery court of Mississippi county to the United States District Court. Prior to the removal, a receiver had been appointed by the chancery court. A motion to remand was filed in the District Court, which was overruled. In the same order overruling the motion to remand, the District Court appointed a receiver other than the one appointed by the state court. The receiver appointed by the state court had taken possession of certain moneys, records, books, and other property belonging to the district. Upon those facts counsel for appellants in their reply brief make the following statements:

580

"Notwithstanding the fact that the property and affairs of the district were in the custody of the state chancery court, the district court appointed a receiver of the same property and affairs, and directed him to apply to the state chancery court for an order to turn them over to the federal receiver. The application was made, but the chancery court refused to make such an order.

"The present appeal is from the order appointing a receiver, and wresting the possession of the property and affairs of the district from the custody of the state chancery court. The propriety of this order is the sole issue involved. This question is fully argued in appellant's original brief, where the pertinent authorities are cited.

"But appellees say that the district court acquired possession of the property and affairs of the district through the alleged removal of the Harper case, and that there was, therefore, no breach of the comity that should obtain between courts of concurrent jurisdiction. We wish to analyze this contention, with perfect frankness, and without any indulgence in refinements or subtleties.

"We concede that the removal of a receivership cause from a state court to a federal court carries the receivership with it, and transfers the custody of the property from the state to the federal court; and that the federal court can retain the receiver appointed by the state court, or replace him with one of its own choosing. We also concede that if the federal court denies a motion to remand, its judgment cannot be questioned collaterally, even though it appears on the face of the record that the cause was not removable. In making these concessions, we are stating a much stronger case for the appellees than they have stated themselves. If, therefore, the record presented a case within the purview of the principles which we concede, the appellant could not ask this court to reverse the order appointing the receiver, on the ground that the property of the district was in the custody of the state chancery court, and the federal court had no right to wrest its possession from the state court."

In the same brief counsel for appellant also make the following statement: "Unfortunately, no appeal can be prosecuted from the order of the district court denying the motion to strike the record in the Harper case from the file, or in the alternative, remanding the case. It may be that if the order appointing a receiver is set aside, the district court may see fit to appoint a receiver in the Harper case. If so, an appeal could be prosecuted from that order, and the question of the removability of that case be finally determined."

While it is thus conceded that the order overruling the motion to remand cannot be appealed from, yet for a full understanding of the case it is necessary to give its history from the beginning, including the removal proceedings.

On August 1, 1930, E. Harper and C. E. Crigger filed a complaint in equity in the Mississippi county, Ark., chancery court, Chickasawba district, against drainage district No. 17 of Mississippi county, Ark., and R. C. Rose, B. A. Lynch, and C. W. Afflick, as commissioners of said district.

The allegations of the complaint are that drainage district No. 17 of Mississippi county was created by Act No. 103 of the General Assembly of the state of Arkansas in 1917 (page 485) for the purpose of constructing and maintaining a system of levees, canals, and ditches to protect and drain the lands in the district, that the district issued, sold, and delivered its negotiable bonds aggregating $3,985,500, which "were sold to various parties and were finally purchased and now are owned by the investing public," and that benefits were assessed and levied upon each tract of land in the district and the entire revenues of the district were pledged as security for the bonds issued and sold.

The complaint contained also the following allegations:

"On account of the failure of the owners of large bodies of lands to pay the annual drainage taxes as they accrued, the tax lien was foreclosed, and the district was compelled, in the absence of any purchasers of said lands, to bid them in for the district. The total acreage thus bid in by the district, and now owned by the district, is approximately Fifteen Thousand. The district has been wholly unable to sell any of these lands, though it has made an effort to do so, and there is no market for them at the price the district is required by law to charge for them.

"The ownership of these lands by the district and the consequent failure of the lands to contribute to the revenues of the district, has shifted the tax burden disproportionately on the paying lands, thereby destroying the uniformity of taxation among the landowners, and causing the forfeiture of large bodies of additional lands each year that otherwise could and would have paid the drainage tax, thus rendering the district progressively less able to meet its obligations and to

accomplish the purpose for which it was created.

"The delinquencies referred to have reduced the revenues of the district to such an extent that the district is wholly unable to meet its outstanding obligations, and it was compelled to default in the payment of the interest on its bonds, including the interest on the bonds held by the plaintiff, E. Harper, due August 1, 1930, such interest amounting in the aggregate to $120,000.00. The district has not sufficient funds on hand and will not have sufficient funds during the present year, to pay this interest, nor will it have sufficient funds to pay either principal or the interest on its bonds as they severally accrue.

"The district has done no maintenance work whatever. As a result, parts of the canals and ditches have filled up, and a condition is fast approaching in which, for lack of proper maintenance, the entire system will cease to function. If this happens, the improvement will be a total failure, and there will be an irreparable loss to the landowners, the creditors, and the public alike.

"The district has $90,000 in cash on hand, a part of which should be used for maintenance. This is imperatively demanded in order to protect enormous bodies of cultivated lands in the district which will be overflowed in the event of high water if the ditches which are now stopped up are not cleaned out. The balance of the funds on hand should be applied pro rata, to the payment of the past due interest on the outstanding bonds. Certain bondholders are threatening by suit or otherwise, to subject these funds to payment in full of the interest due them, to the exclusion of the interest due the other bondholders. To protect everybody alike, this fund should be put beyond the reach of garnishment or other judicial process by taking it into the custody of this court, so that it can be administered according to the equities of all parties concerned."

The complaint also contained the following paragraph: "Plaintiff E. Harper is the owner and holder of certain of the bonds of the district, and he sues on his own behalf, and in behalf of all the owners and holders of bonds of the district who may wish to join herein. Plaintiff, C. E. Crigger, is the owner of cultivated lands in the district, which are assessed for improvement taxes by the district, and he sues on his own behalf, and in behalf of all other landowners in the district who may wish to join herein."

The prayer of the complaint is as follows:

"First. For the appointment of a receiver to take charge of the property, funds and affairs of the district, to be administered under appropriate orders of this court.

"Second. For an order directing the receiver to ascertain at once what maintenance work is imperatively required in order to protect landowners in various parts of the district from irreparable injury from fills and obstructions in the canals and ditches, and for a further order, on the coming in of the report of the receiver, authorizing and directing him to remove such fills and obstructions, to the end that the canals and ditches may function and the threatened injury to the contiguous lands be averted, and authorizing the expenditure by the receiver of whatever amount may be necessary for the purpose, in order to conserve the interest of the landowners, the creditors and the public.

"Third. For such other, further and general relief as the circumstances may demand and warrant, and to equity may seem meet and proper."

The answer of the drainage district, omitting caption and signature of defendants' attorneys, was as follows:

"Comes Drainage District No. 17 of Mississippi County, Arkansas, by its duly and legally acting Board of Commissioners, and for its answer to the complaint of the plaintiffs filed herein;

"Admits that the allegations contained in the complaint of plaintiffs are true in substance and fact.

"The defendant herein joins the plaintiffs in their prayer for the appointment of a receiver herein and to the end that the expense of such a receivership may be held to a minimum and that the receiver and the court may have the benefit of the knowledge and experience of the Board of Commissioners and its organization, the defendant hereby tenders to the receiver and to the Court whatever assistance it may be able to render to the Court and the receiver, subject to the direction of the Court.

"Wherefore having fully answered, defendant prays that a receiver be appointed as set out in the prayer of the plaintiffs' complaint; that this defendant be directed by the Court and the receiver to do and perform such service as is required in the matter and

for all other relief to which it may be entitled."

The object of the suit as appears on the face of the complaint was to have funds belonging to the district applied to the making of certain repairs in the levees and ditches. The answer of the drainage district and the commissioners shows that they were in full accord with the purpose of the suit. There was no controversy between the plaintiffs and the defendants, but the complaint showed that what was used for the purpose of repairing levees and ditches must be taken, from the funds which would otherwise be applicable to the payment of interest on and principal of the bonds.

In order to understand fully the situation on the day these proceedings were had in the chancery court of Mississippi county, a reading of Act No. 103 referred to in the complaint is necessary. It is found at page 485, volume 1, of the Acts of the General Assembly of Arkansas of 1917. The act is entitled "An Act to organize a drainage and levee district in Mississippi county to be known as Drainage District No. 17, for the purpose of reclaiming the lands therein by drainage ditches and levees, and to enable said district to borrow money; for the purpose of abolishing the Keystone Drainage District and for other purposes."

The first section creates the district and describes the lands included therein. Section 2 (page 491) appoints the members of the board of directors of the district, and they are declared to be a corporate body by the name of drainage district No. 17. Section 4 (page 492) provides that the board shall prepare plans for the improvements contemplated by the act and procure estimates from competent engineers as to the cost of such improvements. Section 9 (page 495) provides that the board shall, immediately upon the filing of the plans with the clerk, proceed to view the lands and assess the value of the benefits to accrue to each tract by reason of such improvements. That section also provides that, when the assessment is completed, it shall be deposited with the clerks of the county courts of Mississippi county, and that the clerk shall give notice of the fact by publication for two weeks through some weekly newspaper published in Mississippi county. Section 13 (page 499) provides that, after such notice has been given for two weeks, the board may apply to the county court and secure an order, which shall have the force of a judgment, providing that there shall be assessed upon the real

property of the district a tax sufficient to pay the estimated cost of the improvement. Section 14 (page 500) provides that the amount of taxes shall be annually extended upon the drainage tax books of the county in which such lands lie and shall be collected by the collector of such county along with other taxes.

Section 15 (page 501) reads as follows: "As soon as the board is organized or as soon thereafter as it deems advisable, it shall proceed to a sale of bonds or negotiable notes to pay for the expenses of said improvements or preliminary expense, and said bonds or notes shall be and constitute a lien on all real property taxed in the district the same extent that the tax levied as heretofore provided constitute a lien; and all revenue derived from taxation, sale of bonds or otherwise, under the provisions of this Act, shall be used and expended in accordance with the provisions of this Act."

Section 20 (page 502) reads as follows: "If it should be determined that the tax as levied on the first assessment for the improvements to be made is not sufficient to cover the cost and expense of making said improvements, then the board shall have the right to secure an additional taxation, by making application to the said county court, securing an order therefor, after which the same procedure shall be taken for assessment and collection as has been heretofore provided for the original taxation; provided that when any work has been begun under the provisions of this Act, which shall not be completed and paid for out of the first or other levy, it shall be the duty of said county court to make such levy for its completion from year to year until it is completed, provided that the total levy shall in no case exceed the value of the benefits assessed on said property; and the performance of said duty shall be enforced by mandamus by any person or board interested."

Section 23 (page 504) contains the following paragraphs:

"In order to meet the initiatory expenses and to hasten the work, the board may borrow money at a rate of interest not exceeding six per cent per annum; may issue negotiable bonds or notes therefor, signed by the members of the board; and may pledge all assessments for the repayment thereof. It may also issue to the contractors who do the work, its negotiable evidence of debt, bearing interest at not exceeding six per cent.

"No bonds issued under the terms of this

Act shall run for more than thirty years and all issues of bonds may be divided so that a portion thereof may mature each year, as the assessments are collected, or they may all be made payable at the same time, with proper provisions for a sinking fund."

Section 26 (page 506) reads as follows: "The district or corporate body herein created shall continue to exist after the completion of all ditches and levees and any other work initiated under this Act, and such existence shall continue for the purpose of preserving the work done, cleaning out, deepening, widening ditches and keeping all of said work repaired whenever and wherever necessary."

Section 27 (page 506) provides for the collection by suit by the board of delinquent taxes. The last paragraph of that section reads as follows: "In case the board shall fail to commence suit within sixty days after the taxes become delinquent, the holder of any bond issue by the district shall have right to bring suit for the collection of the delinquent assessments, and the proceedings in such suit brought by the bondholder shall in all respects be governed by the provisions applicable to suit by the board."

Section 29 (page 512) reads as follows:

"All bonds issued by the board, under the terms of this Act shall be secured by a lien on all lands in the district, and the board shall see to it that a tax is levied annually, and collected under the provisions of this bill, so long as it may be necessary to pay any bond issued or obligation contracted under its authority; and the making good said assessment or levy, and collection may be enforced by mandamus.

"If any bond or interest coupon on any bond issued by said board is not paid within thirty days after its maturity, it shall be the duty of the chancery court of the county on the application of any holder of such bond or interest coupon so overdue, to appoint a receiver to collect the taxes aforesaid, and an assessor to reassess the benefits if necessary, and the proceeds of such taxes and collections shall be applied, after payment of costs, first to overdue interest, and then to payment pro rata of all bonds issued by the said board which are then due and payable; and the said receiver may be directed by suit to foreclose the lien of said taxes on said lands; and the suits so brought by the receiver, shall be conducted in all matters as suits by the board, as hereinbefore provided, and with like effect; and the decrees and deeds herein shall have the same presump-

tions in their favor; provided, however, that when all such sums have been paid, the receiver shall be discharged, and the affairs of the district conducted by the board as hereinbefore provided."

The second paragraph of section 30 (page 513) reads as follows: "That to the payment of both the principal and interest of the bonds to be issued under the provisions of this Act, the entire revenues of the district arising from any and all sources, and all lands, real estate, railroads and tramroads (is) subject to taxation in the district are by this Act pledged; and the board of directors are hereby required to set aside annually from the first revenue collected from any source whatever, a sufficient amount to secure and pay the interest on said bonds, and a sinking fund for their ultimate retirement, if a sinking fund is contracted for."

It thus appears from section 23 (page 504) that the assessments are pledged for the repayment of negotiable bonds or notes, and by section 30 (page 513) that "the entire revenues of the district arising from any and all sources" are pledged to the payment of principal and interest of the bonds to be issued under the provisions of the act. It also appears from section 26 (page 506) that the district should continue as a corporate body after the completion of the ditches and levees for the purpose of preserving the work done, cleaning out, deepening, widening ditches, and keeping all of said work repaired whenever and wherever necessary.

The act does not state from what sources the money shall come for the making of such repairs. The other sections referred to devote all of the assessments and all of the revenues to the payment of the interest and principal on the bonds or other obligations.

The act provides for a suit by a single bondholder upon the failure to pay the interest on, or the principal of, his bond. That authorization contemplated a class suit, and provided for a pro rata distribution of the assessments collected through such a suit to the payment of all past-due coupons and bonds. The act does not authorize a suit by any bondholder to divert any part of the assessments or revenues to any purpose other than the payment of the interest and principal of the bonds. The interest of Harper as a bondholder was antagonistic to the interest of Crigger as a landowner. Harper joined with Crigger to divert a part of the funds from the purpose for which they were pledged and to apply them to another pur-

584

pose. The answer of the drainage district and of the members of the board of directors shows that they united with Harper and Crigger in that undertaking.

On August 20, 1930, the Guardian Trust Company, a corporation of Cleveland, Ohio, and Otis & Co., a partnership composed of individuals some of whom were residents and citizens of the state of Ohio, others of the state of Colorado, others of the state of New York, others of the state of Illinois, and another of the state of Michigan, and another of the state of Pennsylvania, appeared specially and filed a motion praying that they be made parties defendant to the cause "to the end that they may present a petition and bond for removal to the United States District Court for the Jonesboro Division of the Eastern District of Arkansas." The motion was accompanied by a petition of the same parties alleging the citizenship as above stated, and stating that Otis & Co., a partner-. ship, represented holders of bonds of the dis-. trict. aggregating $1,682,500, and that such representation was under a pledge executed under date of February 4, 1918.

The petition also alleged that the Guardian Trust Company represented holders of bonds of the district aggregating $2,300,000, and that such representation was under a pledge executed August 28, 1920.

The petition contained, among others, the following allegations:

"That said action named in the caption and instituted by the said C. E. Crigger and E. Harper is a suit of a civil nature being a suit in equity and the immediate purpose thereof was to secure the appointment of a receiver to take possession of $90,000.00 in cash which was then deposited in a local bank at Blytheville, Mississippi County, Arkansas, and the same amount is also one of the items in controversy herein.

"The petitioners allege that the suit brought by the said C. E. Crigger and the said E. Harper was a friendly suit instituted by collusion between the said C. E. Crigger and E. Harper on the one hand and the district and its directors, R. C. Rose, B. A. Lynch and C. W. Afflick on the other hand, and expressly allege that E. Harper was added as a plaintiff in the said suit for the fraudulent purpose of attempting to defeat a removal of this cause to the United States District Court for the Jonesboro Division of the Eastern District of Arkansas. * * *

"The said Drainage District, through its directors the said Rose, Lynch and Afflick,

has been negotiating with the five investment banking houses representing the bondholders for some time previous to the filing of this suit, by the said Crigger and the said Harper, requesting and in fact demanding that the bond dealers should consent to the following program, waiving the provisions of the said bonds and pledges to-wit:

"(a) That the bondholders should consent that not less than $15,000.00 be diverted from the amount of tax money collected by the district prior to August 1, 1930, and applied to the rebuilding of levees and cleaning out of drifts and willows and other rehabilitation work in the district and this demand was coupled with the statement that the district was functioning only 50% because such repairs and rehabilitation work had not been done.

"(b) That the investment banking houses pay the deficiency necessary to meet the coupons due August 1, 1930, after the deduction of the $15,000.00 or more for rehabilitation work.

"(c) That the bond dealers consent to a revision and readjustment of the assessments of benefits throughout the district and forfeit a part of the total pledge of benefits set out in the bond resolutions previously referred to.

"(d) That thereafter the entire bond issue be refunded in some manner so as to reduce tax payments within said district.

"These demands which had been made by the district and by its directors, the said Rose, Lynch and Afflick, are identical with the relief sought by the said E. Harper and C. E. Crigger, and the allegations as to the necessity for a receiver are substantially identical with the allegations of the demand made in writing upon the investment banking houses to the said district and its directors a short time before the filing of the said suit of Harper and Crigger."

The petition then alleges that the cause is removable, and for one of the reasons says: "Because a rearrangement of the parties should be had according to their real status and demands and if and when such a rearrangement of parties plaintiffs and defendants be made then it will manifestly appear that the said plaintiffs C. E. Crigger and E. Harper are merely presenting in this suit the demands previously made upon the bondholders by the said Rose, Lynch and Afflick and by the said Board of Directors of Drainage District No. 17 of Mississippi County, through the said individuals and through

their attorneys, all of which demands coincide exactly with the alleged cause of action and demands set up by the plaintiffs Harper and Crigger in the present suit. As more fully stated above the said district has already demanded of the bondholders that a portion of the tax money be diverted to repairs and rehabilitation work; that a reassessment of benefits be permitted of the lands of the district; and that a refunding program be adopted scaling down the payments to be made to the bondholders. In substance all said demands are set up in the present complaint and from the fact that the district entered its appearance and consented to receiver in the State Court without any notice whatever to the bondholders or to the trustees, it is evident that there is no controversy between the plaintiffs Crigger and Harper on one hand and the drainage district and its commissioners on the other, and upon a rearrangement of the parties, both the present plaintiffs and defendants would be placed on the side of the plaintiffs and the real defendants in this cause are the bondholders and their trustees, petitioners herein."

A bond for removal accompanied the petition.

On the 25th of August, 1930, the Chicago Mill & Lumber Corporation filed a motion entitled "Motion of Chicago Mill & Lumber Company to be made party plaintiff." The motion, omitting caption and signature, reads as follows:

"Comes the Chicago Mill & Lumber Corporation and makes itself a party plaintiff in the above entitled cause, and for cause of action, says:

"This plaintiff is a private corporation organized and existing under the laws of the State of Delaware. Its principal business office is located at Chicago, Illinois, and it is duly authorized as a foreign corporation to do business in the State of Arkansas, and maintains an office and place of business at Blytheville, Arkansas.

"It is the owner in fee simple of certain lands situated within Drainage District No. 17 of Mississippi County, Arkansas, a list of which is attached hereto as a part hereof, marked Exhibit 'A.'

"The plaintiff, E. Harper, is an employee in the office of this plaintiff at Memphis, Tennessee and is the legal owner and holder of the bonds mentioned in the complaint heretofore filed in the above entitled cause, but holds the legal title thereto as trustee for the use and benefit of this plaintiff, who is the equitable owner of said bonds.

"This plaintiff adopts all the allegations of the complaint filed by E. Harper and C. E. Crigger, and prays as prayed in said complaint. In addition thereto, this plaintiff prays as follows:

"For an order authorizing and directing the receiver to repair the levees constructed by the district and to remove the fills and other obstructions in the ditches, to the end that the levees, canals and ditches may function and the threatened injury to the contiguous lands be averted, and authorizing the expenditure by the receiver out of any moneys in his hands or coming into his hands, of whatever amount may be necessary for this purpose, in order to protect and conserve the interests alike of the landowners, the creditors and the public.

"And this plaintiff prays for such other, further and general relief as the circumstances may demand and warrant, and to equity may seem meet and proper."

On the 30th of August, 1930, the First National Bank of Blytheville, Arkansas, filed in the same cause a motion entitled "Motion of First National Bank of Blytheville to be made party plaintiff." The motion, omitting caption and signature, reads as follows:

"Comes now the First National Bank of Blytheville, Arkansas, and having first obtained leave of the court to be joined as a party plaintiff in this cause, says:

"That it is the owner and holder of bonds of the Drainage District No. 17 of Mississippi County, Arkansas, of the par value of $8000.00, said bonds being numbered 1049, 1050, 1051, 1052, 1053, 1292, 1336, 1979 and maturing August 1, 1935, August 1st, 1937, and August 1st, 1941. That the semi-annual interest due upon said bonds on the 1st day of August, 1930, is past due and unpaid, and that default has been made by said district in the payment of the interest due thereon.

"This plaintiff further states that it is informed, and believes, that there is now in the hands of the receiver heretofore appointed by this court for said district, the approximate sum of $89,000.00, derived from the collection of assessments levied by said drainage district to pay the principal and interest of the bonds issued thereby. Plaintiff further alleges that it is informed, and believes, that much of the lands of the district are delinquent in the payment of the annual assessments levied thereon and that suits should be filed by said receiver to enforce the collec-

585

tion of said assessments, to the end that the funds derived therefrom may be applied on the bonds and interest issued and outstanding by said district.

"Wherefore this plaintiff prays that an order be issued by this honorable court, ordering and directing the receiver heretofore appointed in this cause to proceed in the manner provided by law for the collection of all sums due said district upon the assessments heretofore levied upon the lands therein; that said receiver be ordered and directed to apply the funds in his hands, pro rata, upon the interest due upon the various bonds issued and outstanding by said district, and to take such other and further steps for the preservation of the assets of said district and the payment of the indebtedness and obligations of said district, as to the court may seem equitable, just and right."

The record does not show orders of court making the Chicago, Mill & Lumber Corporation and the First National Bank of Blytheville parties plaintiff.

On August 30, 1930, an amendment to the complaint of the district and directors was filed which, omitting caption and signatures, reads as follows: "Plaintiffs allege that drainage taxes due the district are delinquent and ought to be collected, wherefore they pray for an order directing the receiver to collect such taxes, and if necessary, to bring suit to foreclose the lien of such tax on the lands as provided by law."

On September 4, 1930, the court made the following order on the motion of the Guardian Trust Company and Otis & Co.: "The petition of The Guardian Trust Company and Otis & Company as trustees, to be made parties defendant, coming on to be heard, it is ordered that they be and they are hereby made parties defendant for the special purpose of permitting them to file a petition for removal to the United States Court for the Jonesboro Division of the Eastern District of Arkansas."

On the same day the court in the same cause made the following order upon the petition for removal:

"This cause coming on for hearing upon petition and bond of The Guardian Trust Company and Otis & Company, trustees, heretofore made defendants in order that they might file petition and bond for removal, upon their petition and affidavits asking an order transferring this cause to the United States District Court for the Jones-

boro Division of the Eastern District of Arkansas;

"The court finds that the petitioners have filed their bond duly conditioned with good and sufficient sureties as provided by law and have given due and legal notice of the petition for removal. But the court further finding that the said petition and affidavits do not constitute a sufficient petition for removal to said United States District Court,

"Now Therefore said bond is hereby approved, but the said petition is overruled and refused."

On the 15th of September, 1930, in the District Court of the United States for the Jonesboro Division of the Eastern District of Arkansas, the Guardian Trust Company, a corporation, as trustee, and Otis & Co., as trustee, filed a complaint against drainage district No. 17 of the Mississippi county, Ark., and R. C. Rose, B. A. Lynch, and C. W. Afflick, directors of said district. The complaint alleged that the plaintiffs were trustees for bondholders under two different pledges issued by the drainage district, that the interest coupons on the bonds due August 1, 1930, were unpaid by the district, and that thirty days thereafter, under the terms of the statute, the trustees were authorized to secure the appointment of a receiver to take charge of the assessment of benefits and that the suit was brought on behalf of themselves as trustees under the respective pledges to them, and also on behalf of any bond owner or holder who might desire to join. The prayer of the complaint was that the pledge of the revenues of the district be foreclosed, and that a receiver be appointed to take charge of the revenues and assets of said district, and to collect a special assessment sufficient to pay the coupons and bonds then due, and those that might mature thereafter, and for all other proper relief.

On September 19, 1930, the plaintiffs, in the suit brought in the chancery court of Mississippi county, filed in the District Court of the United States for the Jonesboro Division of the Eastern District of Arkansas, a response to petition for removal and motion to remand, which, omitting caption and signature, reads as follows:

"The plaintiffs, responding to the petition for removal, and moving the court to remand the cause, respectfully say:

"That plaintiffs in this suit are: C. E. Crigger, a citizen and resident of the State of Arkansas, who owns land in the Drainage District, First National Bank of Blythe-

ville, a corporation organized under the laws of Arkansas, and a citizen of Arkansas, which owns $8,000.00 of the bonds of the Drainage District, E. Harper, a citizen and resident of Tennessee, who holds the legal title to certain bonds of the district, in trust, however, for the Chicago Mill & Lumber Corporation; and the Chicago Mill & Lumber Corporation, a corporation organized under the laws of the State of Delaware, which owns lands in the district and is the equitable owner of the bonds held by E. Harper.

"The sole defendants are: Drainage District No. 17 of Mississippi County, Arkansas, a quasi public corporation created by a special act of the legislature of Arkansas, and having its domicile in this state; and R. C. Rose, B. A. Lynch and C. W. Afflick, who are citizens and residents of this State, and who together compose the board of directors of the Drainage District.

"As two of the plaintiffs, and all of the defendants, are citizens and residents of this state, it is not a suit of which the district courts of the United States are given original jurisdiction by the Act of Congress, and for this reason the cause is not removable on the ground of prejudice or local influence.

"Neither the Guardian Trust Company, nor Otis & Company, as trustees, are parties to the suit. They are not defendants, and they have not been sued. They have not been made or become defendants. The complaint states no cause of action against them, and no relief is sought as to them. If interested in the subject matter of the suit, they are only interested indirectly. They are not necessary, indispensable, proper or actual parties. They have refused to become actual parties to the suit.

"They filed a petition in the office of the clerk of the Chancery Court of Mississippi County for the Chickasawba District entitled as if filed in this cause, praying for an order removing the cause to this court, but they were not defendants, or parties in any character, when the petition was filed, and the act of filing the petition was in law a nullity.

"They also filed a motion in said court to be made parties defendant for the qualified, limited, sole and exclusive purpose of filing a petition and bond for removal to this court, without otherwise submitting themselves to the jurisdiction so that any relief, if asked could be granted against them, or they could be bound in any manner by the orders and decree of that court. The court entered an order making them parties defendant in this

qualified sense, for the sole and exclusive purpose of filing the petition and bond for removal.

"The Guardian Trust Company and Otis & Company, as Trustees, are not parties defendant, within the meaning and purview of the Removal Act of Congress (Judicial Code, § 28 [28 USCA § 71]) and have no right to file a petition for removal on any ground.

"They have no interest in their fiduciary capacity in this controversy, and they are not authorized by the terms of their respective pledges, nor have they been authorized by the bondholders, or any of them, to become parties defendant. The pledges themselves, which are the patents of their power, give them no authority to become parties defendant, or to bind the bondholders by doing so. The power conferred is very limited, and is confined to just one contingency. The thing pledged is the 'uncollected assessment' levied by the county court upon the real property' in the district, and 'all assessment that may hereafter be levied thereon.' The sole and only authority conferred on the trustees is the following:

" 'In case any property owner makes default in the payment of any assessment,' the trustees 'may take all steps, whether by suit in chancery or by a mandamus, for the enforcement of the rights of the holders of said bonds that are granted to said holders,' or to the district by the terms of the act creating the district.

"The only right granted by the act creating the district to the bondholders or the district is the right to collect the assessments. The only power conferred on the trustees by the pledge instruments or by the law is the power to collect the assessments. They may bring a suit for this purpose, and to that extent, and that only, are they authorized to represent the bondholders or to bind them. If the Chancery Court had made them full defendants, within the purview of the Removal Act, it would have been a vain thing, for they have no personal interest in the suit, and their principal, the bondholders, would not be bound by any decree that might be rendered.

"The plaintiffs are advised that it is not necessary for them to respond to the allegations of prejudice or local influence because a petition for removal on that ground must be filed in the federal court, and such a petition has been filed. They say, however, that the allegations of prejudice and local influence are wholly untrue.

"Wherefore, they pray for an order of this court striking the petition for removal, and the record accompanying it, from the files of this court, on the ground that the court acquired no jurisdiction by virtue thereof, or remanding the cause to the state court, as this court may deem proper in the circumstances."

The response and motion to remand refer to a petition for removal on the ground of prejudice and local influence, which was filed by the Guardian Trust Company and Otis & Co., in the United States District Court at Jonesboro on September 12, 1930. The record does not show any order made on that petition. It is therefore not considered on this appeal. On September 19, 1930, the following proceedings were had in the United States District Court at Jonesboro:

"The Guardian Trust Company, a Corporation, and Otis & Company, Trustee, Plaintiffs, vs. Drainage District No. 17 of Mississippi County, Arkansas, R. C. Rose, B. A. Lynch and C. W. Afflick, Directors of said District, and E. Harper and C. E. Crigger, vs. Drainage District No. 17 of Mississippi County, Arkansas, R. C. Rose, B. A. Lynch and C. W. Afflick, Directors of said District, and The Guardian Trust Company and Otis & Company, Trustees, Defendants. E-245.

"On this day come the parties by their respective solicitors, and the motion of the plaintiffs to remand the case of E. Harper, et al. vs. Drainage District No. 17, et al., on removal from the Chancery Court of Mississippi County, Arkansas, for the Chickasawba District coming on to be heard, the motion to remand is denied.

"And the application of the plaintiffs in The Guardian Trust Company and Otis & Company, as Trustees vs. Drainage District No. 17, et al., for the appointment of a Receiver coming on to be heard on the complaint, the answer, the certified copy of the record and proceedings in the case of E. Harper, et al. vs. Drainage District No. 17, et al., pending in the Chancery Court of Mississippi County for Chickasawba District, and the testimony of C. M. Buck, with exhibits, and the testimony of C. D. Frierson, the application for the appointment of a Receiver is granted.

"And the Court finds that Clifton H. Scott is a proper person and is hereby appointed Receiver of Drainage District No. 17 of Mississippi County, Arkansas, upon the taking of oath of office and the executing of a bond in the sum of One Hundred Thousand Dollars, with good and sufficient sureties, to be approved by the Judge of this Court.

"It is therefore considered, ordered and adjudged that Clifton H. Scott be and he is hereby appointed Receiver of Drainage District No. 17 of Mississippi County, Arkansas, and of the special assessment of benefits, the revenues of said District, and other assets of the District, and collect special assessment or taxes to pay the said coupons or bonds as the same are now due and as the same mature hereafter.

"And it further appearing that C. M. Buck was appointed Receiver of certain assets by the Chancery Court of Mississippi County, Chickasawba District, prior to the removal of said cause to this Court, it is ordered and adjudged that the Receiver appointed by this Court in this order, Clifton H. Scott, be authorized and directed to apply to the said Chancery Court for an order to have C. M. Buck, as Receiver, turn over and surrender to the said Receiver of this Court such property of the District as may be in his hands, and that the Receiver report all his actions hereunder to this Court for approval from time to time.

"And it is further ordered by the Court that the above styled Cause be consolidated."

From the foregoing order it appears that the motion to remand was overruled, that the case removed from the chancery court of Mississippi county was consolidated with the case brought in the United States court, and that a receiver was appointed who was ordered to apply to the chancery court of Mississippi county for an order to have C. M. Buck as receiver, turn over and surrender to the receiver appointed by the United States court such property as he had in his hands belonging to the drainage district.

The order overruling the motion to remand was made without written opinion, but it is clear that the District Court accepted the view of the petitioners and classed the drainage district and the members of its board of directors as plaintiffs and the petitioners as the defendants. Niles-Bement-Pond Co. v. Iron Moulders' Union, 254 U. S. 77, 41 S. Ct. 39, 65 L. Ed. 145; Real Estate Loan Co. v. Brown (D. C.) 23 F.(2d) 329; Young v. Southern Pacific Co. (C. C. A.) 15 F.(2d) 280.

 When the case was removed, the state court lost jurisdiction and the federal court acquired full jurisdiction of the parties and

the subject-matter. On removal, Mr. Buck, the receiver appointed by the state court, became subject to the orders of the federal court. The appointment of another man as receiver was in effect the removal of Mr. Buck. The record does not present a case of conflict of jurisdiction between the state and the federal court with reference to the subject-matter. The removal terminated the jurisdiction of the state court and invested the federal court with jurisdiction.

The federal court directed the receiver appointed by it to apply to the chancery court for an order directing the receiver appointed by it to turn over to the former the property of the district in his possession. The federal court could have made an order directly upon Mr. Buck requiring him to turn over the property. The lower court did not err in the appointment of a receiver.

The case will therefore be affirmed.

GARDNER, Circuit Judge (dissenting).

I am unable to agree with the conclusion reached by my associates in this case. It will only be necessary to restate a few of the undisputed facts to make clear my views.

In the suit brought in the state court by E. Harper and C. E. Crigger against the drainage district, a receiver was appointed who qualified as such on August 1, 1930, and went into possession of the records, books, papers, funds, assets, and affairs of the drainage district, and the res involved in this suit was therefore in his possession under an order of the state court when, on September 15, 1930, the appellees, Guardian Trust Company, as trustee, and Otis & Co., as trustees, filed a new suit in the United States District Court, joining as defendants the drainage district and certain named individuals as directors of the drainage district. As noted in the majority opinion, the appellees, on September 4, 1930, prior to the filing of their suit in federal court, presented to the state court a petition for removal of the Harper case to the federal court which petition was denied, but on that date the court approved the removal bond filed by the appellees. If it be assumed that the state court suit was properly removed to the federal court, then undoubtedly the latter court acquired full jurisdiction, and its order appointing receiver was proper. If, on the other hand, the suit in the state court was not properly removed, then the appointment of a receiver by the federal court was erroneous because, prior thereto, the state court, through the appoint-

ment of a receiver, had taken possession of and acquired jurisdiction over the property involved. Harkin v. Brundage, 276 U. S. 36, 48 S. Ct. 268, 72 L. Ed. 457; Palmer v. Texas, 212 U. S. 118, 29 S. Ct. 230, 53 L. Ed. 435; Wabash R. Co. v. Adelbert College, 208 U. S. 38, 28 S. Ct. 182, 52 L. Ed. 379; Moran v. Sturges, 154 U. S. 256, 14 S. Ct. 1019, 38 L. Ed. 981; Lion Bonding & Surety Co. v. Karatz, 262 U. S. 77, 43 S. Ct. 480, 67 L. Ed. 871; Lion Bonding & Surety Co. v. Karatz, 262 U. S. 640, 43 S. Ct. 641, 67 L. Ed. 1151; Farmers' Loan & Trust Co. v. Lake St. Elevated R. Co., 177 U. S. 51, 20 S. Ct. 564, 44 L. Ed. 667; Priest v. Weaver (C. C. A.) 43 F.(2d) 57.

In determining, therefore, whether the order appointing receiver in the independent suit subsequently brought in the federal court by the appellees was improvidently entered or entered without jurisdiction, it is necessary to determine whether the suit pending in the state court was properly removed. My associates, in the majority opinion, by assuming without discussion that a removal of that suit was effected, have reached the conclusion that "the record does not present a case of conflict of jurisdiction between the state and federal court with reference to the subject-matter. The removal terminated the jurisdiction of the state court and invested the federal court with jurisdiction." This, it seems to me, is a begging of the question and passes without decision the real controversy in this case.

In this connection it should be observed that the order appointing the receiver in the federal court purports on its face to appoint such receiver in the suit brought by appellees in the federal court, and not in the suit purported to have been removed from the state to the federal court; in fact, this order directs the receiver so appointed to apply to the state court for an order requiring the receiver there appointed to turn over and surrender to the receiver of the federal court such property of the district as was in his hands; thus apparently clearly recognizing that the suit was then still pending in the state court and that the federal receiver had not been appointed in a suit removed thereto from the state court, but in the independent suit brought in the federal court. In other words, the lower court, by its order, required its receiver appointed in the suit originally brought in that court to take from the possession of a court of co-ordinate jurisdiction property which it had taken into its possession prior to the time the federal court ap-

590

pointed its receiver. In defense of this action it is urged that, by a removal of the state court suit to the federal court, the latter court acquired such jurisdiction as the state court had acquired, and that with the removal of the suit the receivership was also removed. While it is true there is not presented here a direct attack upon the order denying the motion to remand the Harper suit to the state court, yet the validity of the order appointing the receiver by the lower court is, in the final analysis, dependent upon the removal of the state court suit. If that removal was ineffectual, then the federal court did not acquire jurisdiction in that suit. Crehore v. Ohio & Mississippi R. Co., 131 U. S. 240, 9 S. Ct. 692, 33 L. Ed. 144; Ralya Market Co. v. Armour & Co. (C. C.) 102 F. 530; Fife v. Whittell (C. C.) 102 F. 537; Murphy v. Payette Alluvial Gold Co. (C. C.) 98 F. 321. It is therefore necessary to examine the proceedings which it is claimed resulted in a removal of the state court suit to the federal court.

It is claimed that removal was effected by the appellees through the filing of a petition for removal and a proper bond. But confessedly the appellees were not, when the state court action was instituted, parties thereto. The removal act limits the right of removal to defendants who are actual parties to the suit. Section 71, title 28, USCA; Kidder v. Northwestern Mut. Life Insurance Co. (C. C.) 117 F. 997, 998; Bertha Zinc & Mineral Co. v. Carico (C. C.) 61 F. 132, 136. Did the appellees become defendants to the suit pending in the state court?. As observed in the majority opinion, they appeared specially and filed a motion asking that they be made parties defendant "to the end that they may present a petition and bond for removal to the United States District Court for the Jonesboro Division of the Eastern District of Arkansas." The appellees did not subject themselves to the jurisdiction of the state court. If defendants at all, they were such for the sole and only purpose of securing a removal of the cause. A party to a suit must ordinarily be a person upon whom judgment is conclusive under the rules of res judicata. Appellees sought to be made parties defendant for procedural purposes only, and their application amounted to no more than an application on behalf of those not parties to a suit for leave to file a petition and bond for removal thereof.

The suit on its face was not removable, because one of the plaintiffs was a citizen of Arkansas, as was the defendant district. The appellees were strangers to the record, but they wished to present the contention that none of the funds of the district could properly be used for repairing the levee. They were, however, unwilling to submit that question to the court in which the suit was pending. They could have intervened in that suit, but to have done so would have subjected them to the jurisdiction of the court. While taking the position that they were the real defendants and should be substituted as defendants in lieu of the drainage district, they did not ask such substitution for the obvious reason that, had they gone into the case as substitutes, they could not have exercised the right of removal because the party for whom they were substituted did not have such right. Burnham v. First National Bank (C. C. A.) 53 F. 163; Houston & Texas Cent. R. Co. v. Shirley, 111 U. S. 358, 4 S. Ct. 472, 28 L. Ed. 455; Jefferson v. Driver, 117 U. S. 272, 6 S. Ct. 729, 29 L. Ed. 897. Remaining without the jurisdiction of the state court, they have sought to remove therefrom a suit to the federal court, where they seek to have the issues determined on the merits. After being permitted to file their petition for removal, they were still not subject to the jurisdiction of the state court; they had neither been sued nor become parties defendant in that court.

In Kidder v. Northwestern Mut. Life Insurance Co., supra, it is said: "They were not parties defendant. The statute does not authorize the removal of a suit by any one except 'the defendant or defendants therein.' It makes no provision for removal at the instance of persons who may be pecuniarily interested in the subject-matter in controversy. It makes no provision for compelling or allowing other parties to be impleaded or substituted as defendants, and thereby make a removable cause out of one which was previously not removable."

In Bertha Zinc & Mineral Co. v. Carico, supra, Carico, a citizen of Virginia, sued the Bertha Zinc Company, a Virginia corporation, in a Virginia court for damages on account of personal injuries. The Bertha Zinc & Mineral Company was a New Jersey corporation. It filed a motion for leave to file a petition for removal to the federal court, alleging that it had acquired all the property of the Bertha Zinc Company, and was the real defendant. The motion was accompanied by a petition and bond for removal. The plaintiff objected to the filing of the petition and bond unless the Bertha Zinc & Mineral Company would become a real par-

ty defendant and admit on the record that, in the event plaintiff should recover, it would be liable therefor. This the movant refused to do, and its motion for removal was thereupon denied. Transcript of the record was then filed in federal court. The case in the state court, however, proceeded to judgment in favor of the plaintiff, and the Bertha Zinc & Mineral Company then filed a suit in the federal court in which it alleged that the action had been removed to the federal court and that the state court was without jurisdiction to render judgment, and an injunction against the enforcement of the judgment was asked. A temporary injunction issued, but was later dissolved on the ground that the Bertha Zinc & Mineral Company was not a party defendant to the suit in the state court, and that the federal court had acquired no jurisdiction by the filing of the petition and bond for removal and the lodging of the transcript of the record in that court. In the course of the opinion it is said: "It is clear that the statute contemplates the removal shall be made by a defendant or defendants who are actual parties to the suit. It makes no provision for removal at the instance of persons who may be beneficially interested. It makes no provision for compelling or allowing other parties to interplead in a case, and thereby make the case removable from a state to a United States circuit court, which was not so removable as between the original parties to the action. * * * As we have said, it was not a party defendant to the suit, and refused to enter itself on the record as such. It would be a strange construction of the statute allowing removals to permit the complainant, standing entirely outside of the record of the case in the state court, to present its petition and secure the removal of a case in which the defendant of record had no right to ask for a removal."

In the instant case, not only did appellees not subject themselves to the jurisdiction of the state court, but they submitted no issue of fact to that court. The effect of their motion was for leave to file petition and bond for removal. If the case was in fact removable upon the filing of such a petition and bond, no further action could be taken by the state court except to remove, because it was divested of jurisdiction over the case. Boatmen's Bank v. Fritzlen (C. C. A.) 135 F. 650; New Orleans, Mobile & Texas R. Co. v. Mississippi, 102 U. S. 136, 26 L. Ed. 96; Carson v. Dunham, 121 U. S. 421, 7 S. Ct. 1030, 30 L. Ed. 992. The state court, in a

removable case, is bound to surrender jurisdiction when a case is made which, on the face of the record, shows the petitioner has a right to the transfer. If the record makes a prima facie case and the issues raised are upon facts stated in the petition, these issues must be tried in the federal court, and the jurisdiction of the state court is in abeyance until the federal court may try the issues on motion to remand. Dow v. Bradstreet Co. (C. C.) 46 F. 824; Boatmen's Bank v. Fritzlen (C. C. A.) 135 F. 650; Kansas City, Ft. S. & M. R. Co. v. Daughtry, 138 U. S. 298, 11 S. Ct. 306, 34 L. Ed. 963; Donovan v. Wells Fargo & Co. (C. C. A.) 169 F. 363, 22 L. R. A. (N. S.) 1250; Chesapeake & Ohio R. Co. v. McCabe, 213 U. S. 207, 29 S. Ct. 430, 53 L. Ed. 765.

The filing of the motion to be made parties defendant, for the sole purpose of filing petition and bond for removal, was a mere gesture, and, as before observed, did not invoke any jurisdiction of the state court, and it is not claimed that the removal of the suit was effected by any act of the state court; but the removal, if effected, was brought about in spite of the action of that court through the filing of a petition and bond in proper form.

The petition for removal presented to the state court was denied by that court on the grounds that the movants were not defendants. That court, referring to the appellees, said: "Petitioners are not made defendants by the plaintiffs. They have not made themselves defendants in the sense of the statute. * * * This court either has exclusive jurisdiction of this case, or the federal court has. If this court has jurisdiction, as the matter now stands it could not render a judgment that would affect the petitioners— they would not be bound by it. They are not defendants for the purpose of exercising jurisdiction over the subject matter of the lawsuit. * * * They are not within the jurisdiction of this court as to the subject matter of the litigation. They asked to be made defendants for one purpose only—to remove the case to the federal court. It is my opinion that only a real defendant may make the application."

I am of the view that the cause was not removed to the federal court, and hence the order entered appointing the receiver, if intended to be effective in the Harper Case, was without jurisdiction. Martin v. Snyder, 148 U. S. 663, 13 S. Ct. 706, 37 L. Ed. 602; Dickinson Tire & Machine Co. v. Dickinson (C. C. A.) 29 F.(2d) 493; Tennessee v.

592

Union & Planters' Bank, 152 U. S. 454, 14 S. Ct. 654, 38 L. Ed. 511; Gainesville v. Brown-Crummer Inv. Co., 277 U. S. 54, 48 S. Ct. 454, 72 L. Ed. 781. If, on the other hand, it is sought to sustain the order appointing a receiver as one entered in the suit brought in the federal court, then it was improvidently entered, because the state court had already taken jurisdiction of the subject of the action and appointed a receiver of the res involved. Harkin v. Brundage, 276 U. S. 36, 48 S. Ct. 268, 72 L. Ed. 457; Palmer v. Texas, 212 U. S. 118, 29 S. Ct. 230, 53 L. Ed. 435; Wabash R. Co. v. Adelbert College, 208 U. S. 38, 28 S. Ct. 182, 52 L. Ed. 379; Moran v. Sturges, 154 U. S. 256, 14 S. Ct. 1019, 38 L. Ed. 981; Lion Bonding & Surety Co. v. Karatz, 262 U. S. 77, 43 S. Ct. 480, 67 L. Ed. 871; Lion Bonding & Surety Co. v. Karatz, 262 U. S. 640, 43 S. Ct. 641, 67 L. Ed. 1151; Farmers' Loan & Trust Co. v. Lake St. Elevated R. Co., 177 U. S. 51, 20 S. Ct. 564, 44 L. Ed. 667; Priest v. Weaver (C. C. A.) 43 F.(2d) 57.

It follows that the order of the lower court appointing receiver should be reversed.